# Docket 13-14095-DD

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**SHAWN MARSHALL,**

**Appellant.**

**APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA (ORLANDO)**

**APPELLANT'S APPENDIX**

MARK DIAMOND
Attorney for Appellant
931 Monroe Drive NE
Ste. A102 # 196
Atlanta, GA 30308-1795
Tel.: (917) 660-8758

# TABLE OF CONTENTS

DISTRICT COURT DOCKET SHEET ......................................................TAB A

INDICTMENT ..........................................................................................TAB 10

PLEA AGREEMENT ................................................................................TAB 27

MAGISTRATE'S REPORT AND RECOMMENDATION ......................TAB 31

ORDER .....................................................................................................TAB 43

JUDGMENT..............................................................................................TAB 44

NOTICE OF APPEAL...............................................................................TAB 45

TRANSCRIPT OF PLEA ..........................................................................TAB 51

TRANSCRIPT OF SENTENCING AUGUST 21, 2013 ............................TAB 53

TRANSCRIPT OF SENTENCING AUGUST 22, 2013 ............................TAB 54

PRESENTENCE INVESTIGATION REPORT
(FILED UNDER SEPARATE COVER)

CERTIFICATE OF SERVICE

## U.S. District Court
## Middle District of Florida (Orlando)
## CRIMINAL DOCKET FOR CASE #: 6:13−cr−00053−JA−KRS−1

Case title: USA v. Marshall
Magistrate judge case number:  6:13−mj−01108−GJK

Date Filed: 03/12/2013
Date Terminated: 08/21/2013

Assigned to: Judge John Antoon II
Referred to: Magistrate Judge Karla
R. Spaulding

Appeals court case number:
13−14095 USCA

### Defendant (1)

**Shawn Alan Marshall**
*TERMINATED: 08/21/2013*

represented by **Stephen J. Langs**
Federal Public Defender's Office
Suite 300
201 S Orange Ave
Orlando, FL 32801
407/648−6338 Ext 133
Fax: 407/648−6095
Email: Stephen_Langs@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Craig L. Crawford**
Federal Public Defender's Office
Suite 300
201 S Orange Ave
Orlando, FL 32801
407/648−6338
Fax: 407/648−6095
Email: craig_crawford@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Maria Guzman**
Federal Public Defender's Office
Suite 300
201 S Orange Ave
Orlando, FL 32801
407/648−6338
Fax: 407/648−6095
Email: Maria_Guzman@fd.org
*TERMINATED: 03/08/2013*
*Designation: Public Defender or Community
Defender Appointment*

### Pending Counts

18:2242A.F FORCED SEX
THREATS/FEAR OF HARM
(2)

### Disposition

Imprisonment: Life; Supervised release: 10 years.
Mandatory drug testing requirements are imposed.
Special conditions of supervised release: Participate
in programs for treatment of drug/alcohol

dependency and mental health treatment specializing in sexual offender treatment and submit to polygraph testing and contribute to the costs of these programs; Register with the state sexual offender registration agency in any state you reside, visit, are employed, etc.; Register as a sexual offender under (SORNA); Deft. shall have no direct contact with minors and shall refrain from entering into any area where children frequently congregate; Deft. shall not possess, subscribe to or view any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions; Deft. shall not possess or use a computer with access to any online service at any location; Deft. shall submit to a search of his person, residence, place of business, etc.; Cooperate in the collection of DNA; Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit and provide probation officer access to any requested financial information. Fine: Waived; Special assessment: $100.00 Restitution: Deferred and a hearing will be set within 90 days by separate notice. Deft. is remanded to the custody of the U.S. Marshal

### Highest Offense Level (Opening)

Felony

### Terminated Counts

18:2423.F COERCION OR
ENTICEMENT OF MINOR
FEMALE
(1)

### Disposition

Dismissed

### Highest Offense Level (Terminated)

Felony

### Complaints

18:2242A.F FORCED SEX
THREATS/FEAR OF HARM

### Disposition

### Plaintiff

**USA**

represented by **Andrew C. Searle**
US Attorney's Office – FLM
Suite 3100
400 W Washington St
Orlando, FL 32801
407/648–7500
Email: andrew.searle@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/04/2013 | 1 | COMPLAINT as to Shawn Alan Marshall (1). (KKA) [6:13−mj−01108−GJK] (Entered: 03/04/2013) |

| 03/04/2013 | 3 | NOTICE of possible conflict of interest by USA as to Shawn Alan Marshall No conflict of interest. (Searle, Andrew) [6:13−mj−01108−GJK] (Entered: 03/04/2013) |
| 03/06/2013 | | Arrest of Shawn Alan Marshall on 3/6/13. (KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/06/2013 | 4 | Minute Entry for proceedings held before Magistrate Judge Gregory J. Kelly: Initial Appearance as to Shawn Alan Marshall held on 3/6/2013. (digital) (KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/06/2013 | 5 | ***CJA 23 Financial Affidavit by Shawn Alan Marshall. (KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/06/2013 | 6 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Shawn Alan Marshall. Maria Guzman for Shawn Alan Marshall appointed. Signed by Magistrate Judge Gregory J. Kelly on 3/6/2013. (KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/06/2013 | 7 | ORDER OF TEMPORARY DETENTION as to Shawn Alan Marshall. Detention and Preliminary Hearing set for 3/13/2013 at 10:00 AM in Orlando Courtroom 3 C before Magistrate Judge Gregory J. Kelly. Signed by Magistrate Judge Gregory J. Kelly on 3/6/2013. ctp(KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/06/2013 | 8 | Arrest Warrant Returned Executed on 3/5/13. as to Shawn Alan Marshall. (KKA) [6:13−mj−01108−GJK] (Entered: 03/06/2013) |
| 03/08/2013 | 9 | NOTICE OF ATTORNEY APPEARANCE: Stephen J. Langs appearing for Shawn Alan Marshall *and Substitution of Counsel* (Langs, Stephen) [6:13−mj−01108−GJK] (Entered: 03/08/2013) |
| 03/12/2013 | 10 | INDICTMENT returned in open court as to Shawn Alan Marshall (1) count(s) 1, 2. (SAH) (Entered: 03/13/2013) |
| 03/13/2013 | 11 | Minute Entry for proceedings held before Magistrate Judge Gregory J. Kelly: ARRAIGNMENT as to Shawn Alan Marshall (1) Count 1, 2 held on 3/13/2013 Defendant(s) pled not guilty, MISCELLANEOUS hearing held on 3/13/2013 as to Shawn Alan Marshall. (digital) (KKA) (Entered: 03/13/2013) |
| 03/13/2013 | 12 | SCHEDULING ORDER as to Shawn Alan Marshall. Status Conference set for 4/19/2013 at 09:15 AM in Orlando Courtroom 6 B before Judge John Antoon II, Jury Trial set for 5/6/2013 at 09:00 AM before Judge John Antoon II. Signed by Magistrate Judge Gregory J. Kelly on 3/13/2013. ctp(KKA) (Entered: 03/13/2013) |
| 03/13/2013 | 13 | WAIVER of Preliminary Hearing by Shawn Alan Marshall. ctp (KKA) (Entered: 03/13/2013) |
| 03/13/2013 | 14 | ORDER OF DETENTION without prejudice as to Shawn Alan Marshall. Signed by Magistrate Judge Gregory J. Kelly on 3/13/2013. ctp (KKA) (Entered: 03/13/2013) |
| 03/14/2013 | 15 | NOTICE of pendency of related cases re *6:13−mj−1108* order of compliance to Local Rule as to Shawn Alan Marshall by USA. Related case(s): Yes (Searle, Andrew) (Entered: 03/14/2013) |
| 03/14/2013 | 16 | NOTICE OF ATTORNEY APPEARANCE Andrew C. Searle appearing for USA. (Searle, Andrew) (Entered: 03/14/2013) |
| 03/14/2013 | 17 | NOTICE of estimated length of trial by USA Estimated trial length: four days. (Searle, Andrew) (Entered: 03/14/2013) |
| 03/14/2013 | 18 | NOTICE of possible conflict of interest *Tracy P. Preece, Esq.* by USA as to Shawn Alan Marshall A possible conflict of interest does exist. (Searle, Andrew) (Entered: 03/14/2013) |
| 03/14/2013 | 19 | CERTIFICATE of interested persons and corporate disclosure statement by USA (Searle, Andrew) (Entered: 03/14/2013) |
| 04/11/2013 | 20 | NOTICE OF RESCHEDULING HEARING: The Criminal Status Conference hearing previously scheduled for April 19, 2013 is rescheduled as to Shawn Alan |

| | | |
|---|---|---|
| | | Marshall. New hearing date and time: Status Conference set for 4/18/2013 at 10:00 AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP (DJD) (Entered: 04/11/2013) |
| 04/18/2013 | 21 | Minute Entry for proceedings held before Judge John Antoon II: CRIMINAL STATUS Conference as to Shawn Alan Marshall held on 4/18/2013. Court Grants Defendant's Motion to Continue Trial to the July 2013 trial term upon the filing of a written motion to continue and waiver of speedy trial. Counsel for Pltf: Shawn Napier; Counsel for Deft: Stephen J. Langs. Start time: 10:14 a.m; End time: 10:17 a.m. Court Reporter: Amie First (DJD) (Entered: 04/18/2013) |
| 04/22/2013 | 22 | Unopposed MOTION to continue trial by Shawn Alan Marshall. (Langs, Stephen) (Entered: 04/22/2013) |
| 04/22/2013 | 23 | WAIVER of speedy trial through Monday September 2, 2013 by Shawn Alan Marshall (Langs, Stephen) (Entered: 04/22/2013) |
| 04/25/2013 | 24 | PLEA AGREEMENT re: count(s) Two of the Indictment as to Shawn Alan Marshall (Searle, Andrew) (Entered: 04/25/2013) |
| 05/02/2013 | 25 | NOTICE OF HEARING as to Shawn Alan Marshall. Change of Plea Hearing set for 5/8/2013 at 11:00 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 05/02/2013) |
| 05/03/2013 | 26 | ORDER Granting 22 Motion to continue trial as to Shawn Alan Marshall. Jury Trial set for the trial term commencing 6/3/2013 in Orlando Courtroom 6B before Judge John Antoon II. Status Conference set for 5/22/2013 at 08:45 AM in Orlando Courtroom 6 B before Judge John Antoon II. Signed by Judge John Antoon II on 5/3/2013. CTP (DJD) (Entered: 05/03/2013) |
| 05/08/2013 | 27 | PLEA AGREEMENT − AMENDED re: count(s) Two of the Indictment as to Shawn Alan Marshall (Searle, Andrew) (Entered: 05/08/2013) |
| 05/08/2013 | 28 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Change of Plea Hearing as to Shawn Alan Marshall held on 5/8/2013. (DIGITAL) (ECJ) (Entered: 05/08/2013) |
| 05/08/2013 | 29 | NOTICE regarding plea of guilty by Shawn Alan Marshall. (ECJ) (Entered: 05/08/2013) |
| 05/08/2013 | 30 | CONSENT TO INSPECTION of Presentence Investigation Report by Shawn Alan Marshall. (ECJ) (Entered: 05/08/2013) |
| 05/08/2013 | 31 | REPORT AND RECOMMENDATIONS concerning Plea of Guilty re: Count Two of the Indictment as to Shawn Alan Marshall. Signed by Magistrate Judge Karla R. Spaulding on 5/8/2013. (copies provided)(ECJ) (Entered: 05/08/2013) |
| 05/08/2013 | 32 | NOTICE of no objection re 31 Report and Recommendations concerning plea of guilty by USA as to Shawn Alan Marshall. (ECJ) (Entered: 05/08/2013) |
| 05/22/2013 | 33 | ACCEPTANCE OF PLEA of guilty and adjudication of guilt re: Count Two of the Indictment as to Shawn Alan Marshall. Signed by Judge John Antoon II on 5/22/2013. CTP (DJD) (Entered: 05/22/2013) |
| 05/22/2013 | 34 | NOTICE OF HEARING as to Shawn Alan Marshall Sentencing set for 8/2/2013 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. All Objections to the Pre−Sentence Report or Motions pertaining thereto shall be in writing and filed no later than three (3) days prior to the sentencing hearing. Counsel is to notify the Courtroom Deputy Clerk as soon as possible if they believe the sentencing will be longer than 30 minutes. CTP (DJD) (Entered: 05/22/2013) |
| 06/17/2013 | 35 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for August 2, 2013 is rescheduled as to Shawn Alan Marshall. New hearing date and time:Sentencing set for 8/21/2013 at 09:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP (DJD) (Entered: 06/17/2013) |
| 08/15/2013 | 36 | MOTION to Seal (Mr Marshall's Motion to File Report Under Seal) by Shawn Alan Marshall. (Langs, Stephen) Modified on 8/15/2013 (LAK). (Entered: 08/15/2013) |

| 08/16/2013 | 37 | ORDER granting 36 Motion to Seal as to Shawn Alan Marshall (1). Signed by Magistrate Judge Karla R. Spaulding on 8/16/2013. (LAK) (Entered: 08/19/2013) |
|---|---|---|
| 08/16/2013 | | S−38 Sealed Document (MAL) (Entered: 08/19/2013) |
| 08/21/2013 | 39 | MOTION for Reconsideration by Shawn Alan Marshall. (Langs, Stephen) (Entered: 08/21/2013) |
| 08/21/2013 | 40 | RESPONSE in Opposition by USA as to Shawn Alan Marshall re 39 MOTION for Reconsideration (Searle, Andrew) (Entered: 08/21/2013) |
| 08/21/2013 | 41 | Minute Entry for proceedings held before Judge John Antoon II: SENTENCING held on 8/21/2013 for Shawn Alan Marshall − Count 1 is Dismissed; Count 2 − Imprisonment: Life; Supervised release: 10 years. Mandatory drug testing requirements are imposed. Special conditions of supervised release: Participate in programs for treatment of drug/alcohol dependency and mental health treatment specializing in sexual offender treatment and submit to polygraph testing and contribute to the costs of these programs; Register with the state sexual offender registration agency in any state you reside, visit, are employed, etc.; Register as a sexual offender under (SORNA); Deft. shall have no direct contact with minors and shall refrain from entering into any area where children frequently congregate; Deft. shall not possess, subscribe to or view any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions; Deft. shall not possess or use a computer with access to any online service at any location; Deft. shall submit to a search of his person, residence, place of business, etc.; Cooperate in the collection of DNA; Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit and provide probation officer access to any requested financial information. Fine: Waived; Special assessment: $100.00 Restitution: Deferred and a hearing will be set within 90 days by separate notice. Deft. is remanded to the custody of the U.S. Marshal. Court Reporter: Amie First (DJD) (Entered: 08/22/2013) |
| 08/22/2013 | 42 | NOTICE OF HEARING as to Shawn Alan Marshall Restitution Hearing set for 11/21/2013 at 09:30 AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP (DJD) (Entered: 08/22/2013) |
| 08/27/2013 | 43 | MEMORANDUM AND OPINION on sentencing hearing and ORDER denying 39 Motion for Reconsideration as to Shawn Alan Marshall (1) signed by Judge John Antoon II on 8/23/2013. (Certified copies to USM, US Probation, US Pretrial, AUSA and Public Defender) (AKJ) (Entered: 08/27/2013) |
| 08/27/2013 | 44 | JUDGMENT as to Shawn Alan Marshall (1), Count 1 is dismissed; Count 2 − Imprisonment: Life; Supervised release: 10 years. Mandatory drug testing requirements are imposed. Special conditions of supervised release: Participate in programs for treatment of drug/alcohol dependency and mental health treatment specializing in sexual offender treatment and submit to polygraph testing and contribute to the costs of these programs; Register with the state sexual offender registration agency in any state you reside, visit, are employed, etc.; Register as a sexual offender under (SORNA); Deft. shall have no direct contact with minors and shall refrain from entering into any area where children frequently congregate; Deft. shall not possess, subscribe to or view any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions; Deft. shall not possess or use a computer with access to any online service at any location; Deft. shall submit to a search of his person, residence, place of business, etc.; Cooperate in the collection of DNA; Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit and provide probation officer access to any requested financial information. Fine: Waived; Special assessment: $100.00 Restitution: Deferred and a hearing will be set within 90 days by separate notice. Deft. is remanded to the custody of the U.S. Marshal Signed by Judge John Antoon II on 8/27/2013. (certified copies to AUSA, Public Defender, USM)(AKJ) (Entered: 08/27/2013) |
| 08/29/2013 | 45 | NOTICE OF APPEAL by Shawn Alan Marshall re 44 Judgment Filing fee not paid. (Langs, Stephen) (Entered: 08/29/2013) |
| 08/30/2013 | 46 | TRANSMITTAL of initial appeal package as to Shawn Alan Marshall to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being |

| | | |
|---|---|---|
| | | appealed, and motion, if applicable to USCA re 45 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (CH) (Entered: 08/30/2013) |
| 09/16/2013 | | USCA Case Number as to Shawn Alan Marshall. USCA Number: 13−14095 for 45 Notice of Appeal filed by Shawn Alan Marshall. (LAK) (Entered: 09/16/2013) |
| 09/23/2013 | 47 | NOTICE OF ATTORNEY APPEARANCE: Craig L. Crawford appearing for Shawn Alan Marshall *for purposes of appeal* (Crawford, Craig) (Entered: 09/23/2013) |
| 09/23/2013 | 48 | TRANSCRIPT information form filed by Shawn Alan Marshall for proceedings held on 5/8/13, 8/21/13, 8/22/13 before Judge Antoon re 45 Notice of Appeal. USCA number: 13−14095−D (Crawford, Craig) (Entered: 09/23/2013) |
| 10/01/2013 | 49 | Judgment Returned Executed as to Shawn Alan Marshall on 9/20/2013. Institution: USP Tucson, Tucson, Arizona. (MAL) Modified on 10/2/2013 (LMM). (Entered: 10/01/2013) |
| 10/07/2013 | 50 | COURT REPORTER ACKNOWLEDGEMENT by Amie R. First, RPR, CRR re 45 Notice of Appeal as to Shawn Alan Marshall Estimated transcript filing date: 10−24−13. (ARF) (Entered: 10/07/2013) |
| 10/31/2013 | 51 | TRANSCRIPT of Change of Plea for dates of 5−8−13 held before Judge Karla J. Spaulding, re: 45 Notice of Appeal as to Shawn Alan Marshall. Court Reporter/Transcriber Amie R. First, RPR, CRR, AmieFirst.CourtReporter@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2013, Redacted Transcript Deadline set for 12/2/2013, Release of Transcript Restriction set for 1/29/2014. (ARF) (Entered: 10/31/2013) |
| 10/31/2013 | 52 | TRANSCRIPT of Sentencing for dates of 8−21−13 held before Judge John Antoon, II, re: 45 Notice of Appeal as to Shawn Alan Marshall. Court Reporter Amie R. First, RPR, CRR, AmieFirst.CourtReporter@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2013, Redacted Transcript Deadline set for 12/2/2013, Release of Transcript Restriction set for 1/29/2014. (ARF) REDACTED TRANSCRIPT FILED AT #53 (Entered: 10/31/2013) |
| 10/31/2013 | 53 | Redaction re 52 Transcript − Appeal in case as to Shawn Alan Marshall (ARF) (Entered: 10/31/2013) |
| 10/31/2013 | 54 | TRANSCRIPT of Continued Sentencing for dates of 8−22−13 held before Judge John Antoon, II, re: 45 Notice of Appeal as to Shawn Alan Marshall. Court Reporter Amie R. First, RPR, CRR, AmieFirst.CourtReporter@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2013, Redacted Transcript Deadline set for 12/2/2013, Release of Transcript Restriction set for 1/29/2014. (ARF) (Entered: 10/31/2013) |
| 10/31/2013 | 55 | NOTIFICATION that transcript has been filed by Amie R. First, RPR, CRR re: 45 Notice of Appeal as to Shawn Alan Marshall USCA number: 13−14095 (ARF) (Entered: 10/31/2013) |
| 10/31/2013 | 56 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office |

| | | public terminal as to Shawn Alan Marshall. Court Reporter: Amie First (ARF) (Entered: 10/31/2013) |
|---|---|---|
| 11/01/2013 | | ***ENTERED IN ERROR*** (MAL) Modified on 11/1/2013 (MAL). (Entered: 11/01/2013) |
| 11/20/2013 | 57 | Restitution STIPULATION of the Parties by USA and Shawn Alan Marshal(Attachments: #1 Text of Proposed Order)(Searle, Andrew) Modified on 11/21/2013 (MAL). (Entered: 11/20/2013) |
| 11/21/2013 | 58 | RESTITUTION ORDER as to Shawn Alan Marshall. The total amount of restitution ordered to be paid by the defendant to the victim in this case is $425.00. Signed by Judge John Antoon II on 11/21/2013. CTP (DJD) (Entered: 11/21/2013) |
| 11/21/2013 | 59 | NOTICE canceling Restitution hearing scheduled for November 21, 2013 as to Shawn Alan Marshall. CTP (DJD) (Entered: 11/21/2013) |

FILED

UNITED STATES DISTRICT COURT 13 MAR 12 PM 4:01
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

SHAWN ALAN MARSHALL

CASE NO. 6:13-cr- 53 or L 28 KRS
18 U.S.C. § 2423(a)
18 U.S.C. 2242(1)
18 U.S.C. § 2428 - Forfeiture

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**

Beginning on or about March 2, 2011 and continuing through on or about

March 3, 2011, in Hillsborough County, Florida, in the Middle District of Florida,

and elsewhere,

**SHAWN ALAN MARSHALL,**

the defendant herein, did knowingly transport and cause to be transported a minor

female, who had not attained the age of 18 years, in interstate commerce, that is,

from Hawaii to Florida, with intent that the minor female engage in any sexual

activity for which any person can be charged with a criminal offense.

All in violation of Title 18, United States Code, Section 2423(a).

### COUNT TWO

Beginning on or about March 16, 2011 and continuing through on or about November 30, 2012, at Patrick Air Force Base, in Brevard County, in the Middle District of Florida, and within the territorial jurisdiction of the United States,

### SHAWN ALAN MARSHALL,

the defendant herein, did knowingly cause a minor female to engage in sexual acts, that is, penetrating the minor female's vagina with his penis and causing his mouth to have contact with the minor female's vagina, by threatening the minor female and placing the minor female in fear.

All in violation of Title 18, United States Code, Sections 2242(1) and 7.

### FORFEITURE

1.     The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2428.

2.     Pursuant to Title 18, United States Code, Section 2428, upon conviction of an offense in violation of Title 18, United States Code, Section 2423, the defendant, **SHAWN ALAN MARSHALL**, shall forfeit to the United States of America any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of the offenses and any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offenses.

2

3.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_____
Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
Andrew C. Searle
Assistant United States Attorney

By: _____
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

3

FORM OBD-34
APR 1991

Case 6:13-cr-00053-JA-KRS  Document 10  Filed 03/12/13  Page 4 of 4 PageID 18
No. USCA11 Case: 13-14095  Document: 26  Date Filed: 04/30/2014  Page: 13 of 133

## UNITED STATES DISTRICT COURT

Middle District of Florida
Orlando Division

### THE UNITED STATES OF AMERICA

vs.

### SHAWN ALAN MARSHALL

### INDICTMENT

Violations:

18 U.S.C. 2242(1) and 18 U.S.C. 2423(a)

A true bill,

_____
Foreperson

Filed in open court this 12th day

of March, 2013.

_____
Clerk

Bail  $_____

GPO 863 525

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:13-cr-53-Orl-28-KRS

SHAWN ALAN MARSHALL

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, **SHAWN ALAN MARSHALL**, and the attorney for the defendant, Stephen J. Langs, mutually agree as follows:

A.      **Particularized Terms**

1.      Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment.  Count Two charges the defendant with knowingly causing a minor female to engage in sexual acts, that is, penetrating the minor female's vagina with his penis and causing his mouth to have contact with the minor female's vagina, by threatening the minor female or placing the minor female in fear, within the territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 2242(1) and (7).

X Defendant's Initials _____          AF Approval _____

2.   <u>Maximum Penalties</u>

Count One carries a maximum sentence of up to life imprisonment, a fine of $25,000, a term of supervised release of five years up to life, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offense, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.   <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Count Two are:

First:     the defendant caused the minor female to participate in sexual acts;

Second:    the defendant did so by threatening the minor female or placing the minor female in fear;

Third:     the defendant did these acts knowingly; and

Fourth:    the acts occurred within the territorial jurisdiction of the United States.

4.   <u>Counts Dismissed</u>

At the time of sentencing, the remaining count against the defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

Defendant's Initials _____     2

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. §§ 3663(a) and (c)(1) and 18 U.S.C. § 2248, the defendant agrees to make full restitution to the minor female described in the Indictment.

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _____        3

8.    Acceptance of Responsibility - Two Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the

Defendant's Initials _____    4

defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

**B.** **Standard Terms and Conditions**

    1.    <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

Defendant's Initials _____      5

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which the defendant pleads, to respond to comments made by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit

Defendant's Initials _____        6

reflecting the defendant's financial condition.  The defendant promises that

his/her financial statement and disclosures will be complete, accurate and

truthful and will include all assets in which he/she has any interest or over which

the defendant exercises control, directly or indirectly, including those held by a

spouse, dependent, nominee or other third party.  The defendant further agrees

to execute any documents requested by the United States needed to obtain from

any third parties any records of assets owned by the defendant, directly or

through a nominee, and, by the execution of this Plea Agreement, consents to

the release of the defendant's tax returns for the previous five years.  The

defendant similarly agrees and authorizes the United States Attorney's Office to

provide to, and obtain from, the United States Probation Office, the financial

affidavit, any of the defendant's federal, state, and local tax returns, bank records

and any other financial information concerning the defendant, for the purpose of

making any recommendations to the Court and for collecting any assessments,

fines, restitution, or forfeiture ordered by the Court.  The defendant expressly

authorizes the United States Attorney's Office to obtain current credit reports in

order to evaluate the defendant's ability to satisfy any financial obligation

imposed by the Court.

     5.   <u>Sentencing Recommendations</u>

       It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement, or

Defendant's Initials _____          7

defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office.  The defendant

understands and acknowledges that, although the parties are permitted to make

recommendations and present arguments to the Court, the sentence will be

determined solely by the Court, with the assistance of the United States

Probation Office.  The defendant further understands and acknowledges that any

discussions between the defendant or the defendant's attorney and the attorney

or other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any recommendations

be rejected, the defendant will not be permitted to withdraw the defendant's plea

pursuant to this plea agreement.  The government expressly reserves the right to

support and defend any decision that the Court may make with regard to the

defendant's sentence, whether or not such decision is consistent with the

government's recommendations contained herein.

6.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority

to impose any sentence up to the statutory maximum and expressly waives the

right to appeal the defendant's sentence on any ground, including the ground

that the Court erred in determining the applicable guidelines range pursuant to

the United States Sentencing Guidelines, except (a) the ground that the

sentence exceeds the defendant's applicable guidelines range as determined by

Defendant's Initials ⎽⎽⎽⎽⎽⎽⎽⎽           8

the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7.      Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.      Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

9.      Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the

Defendant's Initials _____        9

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the defendant's complete satisfaction with the representation and advice received from the defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in the defendant's defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial. The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel (if any), the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement. The defendant also understands that the defendant will be adjudicated guilty of the offenses to which the defendant has pleaded and, if any of such offenses are felonies, may

Defendant's Initials _____          10

thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10.    Factual Basis

The defendant is pleading guilty because the defendant is in fact guilty. The defendant certifies that the defendant does hereby admit that the facts set forth below, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

### FACTS[1]

Beginning on or about March 16, 2011, and continuing through and including on or about November 30, 2012, at Patrick Air Force Base, in Brevard County, in the Middle District of Florida, and within the territorial jurisdiction of the United States, the defendant, **SHAWN ALAN MARSHALL ("MARSHALL")**, knowingly caused a minor female to engage in sexual acts, that is penetrating the minor female's vagina with his penis and causing his mouth to have contact with the minor female's vagina, by threatening the minor female or placing the minor female in fear.

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant to the defendant's involvement in the crime to which the defendant is pleading guilty and other illegal activities in which the defendant may have been involved.

Defendant's Initials _Sm_      11

The minor female described above, and in the Indictment, is a relative of **MARSHALL'S**. **MARSHALL** began sexually abusing the minor female in April or May 2008 when **MARSHALL**, the minor female, and other members of their family lived in Hawaii. **MARSHALL** drank excessive amounts of alcohol and was physically and verbally abusive to other family members in the presence of the minor female. On one occasion, the minor female witnessed **MARSHALL** pick up a futon couch, which the minor female's mother was laying on, and turn the couch over, on top of her mother. Due to **MARSHALL'S** excessive drinking and abusive behavior, the minor female feared **MARSHALL** and complied with all of his sexual demands because she feared he would bodily harm her if she did not comply. While the family was still living in Hawaii, **MARSHALL** told the minor female's mother, who is also his wife, that if she (the mother) would not have sex with him, he would rape the minor female.

On or about March 2, 2011, **MARSHALL**, the minor female, and other family members moved from Hawaii to Florida, by commercial flight, arriving at the Tampa airport, in Hillsborough County, on March 3, 2011. The family temporarily lived in hotels in the Middle District of Florida. During this period, **MARSHALL** attempted to create situations where he and the minor female would be alone in the hotel rooms, by asking his wife to run errands and asking other family members to leave the hotel room. **MARSHALL** was unable to get the minor female alone while the family was living in hotels.

Defendant's Initials _____       12

On or about March 16, 2011, the family, including **MARSHALL** and the minor female, moved into a townhouse, located on Patrick Air Force Base, which is within the exclusive territorial jurisdiction of the United States.  Once the family moved into the residence on the Air Force Base, **MARSHALL** resumed sexually abusing the minor female.  The abuse typically occurred when the minor female's mother was at work and consisted of **MARSHALL** penetrating the minor female's vagina with his penis on multiple occasions in the bathrooms, the master bedroom, and the dining room of the Air Force Base home.  When the abuse occurred in the bathroom, **MARSHALL** locked the minor female in the bathroom with him, and was careful to make sure that he and the minor female left the bathroom separately after he was finished.  **MARSHALL** also placed his mouth on the minor female's vagina while in the master bedroom of the Air Force Base residence.  In November 2012, **MARSHALL** sexually abused the minor female for the last time.

During some of the sexual abuse, **MARSHALL** used physical force on the minor female.  In Hawaii and on the Air Force Base, **MARSHALL** pinned the minor victim's arms behind her back while vaginally penetrating her with his penis.  On another occasion in Hawaii, **MARSHALL** wrapped an amplifier cord around the minor female's throat, while engaging in a sexual act with her.  On yet another occasion, in the Air Force Base home, **MARSHALL** called the minor female into the master bedroom and told her to take off her shirt.  When the

Defendant's Initials _____                    13

minor female hesitated, lifting her shirt up only half-way, **MARSHALL** pulled the shirt off of the minor female's body and inserted his penis into her vagina.

While the family lived in the Air Force Base home, **MARSHALL** continued to be physically and verbally abusive in the presence of the minor female and the minor female continued to comply with all of **MARSHALL'S** sexual demands because she feared him.  On one occasion, during an argument inside the Air Force Base home, the minor female witnessed **MARSHALL** punch a hole in her bedroom door.  **MARSHALL** also used coercion to prevent the victim from disclosing the abuse, telling her that if anyone found out it would destroy the family.

On or about February 7, 2013, the minor female told her mother that **MARSHALL** had been sexually abusing her for years.  The mother contacted **MARSHALL**, via cellular telephone, and told him she knew what was going on.  **MARSHALL** immediately responded by stating: "Oh my God.  I am so sorry. (I knew you would find out.")

11. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____          14

12. Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that the defendant fully understands its terms.

DATED this 23ᴿᴰ day of ~~March,~~ *APRIL* 2013.

ROBERT E. O'NEILL
United States Attorney

_____              By: _____
SHAWN ALAN MARSHALL                    Andrew C. Searle
Defendant                              Assistant United States Attorney

_____              _____
Stephen J. Langs                       Carlos A. Perez-Irizarry
Attorney for Defendant                 Assistant United States Attorney
                                       Chief, Orlando Division

Endnote 1 — DEFENDANT ACTUALLY SAID,
"I KNOW I'VE DESTROYED US."
(not I KNOW YOU WOULD FIND OUT)

Defendant's Initials _____   15

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-

Case No. 6:13-cr-53-Orl-28KRS

SHAWN ALAN MARSHALL

## REPORT AND RECOMMENDATION
## CONCERNING PLEA OF GUILTY

The Defendant, by consent, has appeared before me pursuant to Rule 11, F.R.Cr.P. and Rule

6.01(c)(12), Middle District of Florida Local Rules, and has entered a plea of guilty to Count Two of

the Indictment. After cautioning and examining the Defendant under oath concerning each of the

subjects mentioned in Rule 11, I determined that the guilty plea was knowledgeable and voluntary and

that the offenses charged are supported by an independent basis in fact containing each of the essential

elements of such offense. I therefore recommend that the plea agreement and the plea of guilty be

accepted and that the Defendant be adjudged guilty and have sentence imposed accordingly. The

Defendant is in custody of the U.S. Marshal pending sentencing.

Date: May 8, 2013

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Failure to file written objections to this Report and Recommendation within fourteen (14) days from
the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before
the assigned United States District Judge. 28 U.S.C. Section 636(b)(1)(B), Rule 6.02 Middle District of
Florida Local Rules.

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
Counsel of Record:
District Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

-vs-                                               **Case No: 6:13-cr-53-Orl-28KRS**

**SHAWN ALAN MARSHALL**

_____

## ORDER

This Order is entered to explain the sentence imposed in this case, which exceeds the United States Sentencing Guidelines recommended range.

Defendant Shawn Alan Marshall appeared before me for sentencing after entering a plea of guilty to the offense of Knowingly Causing a Minor Female to Engage in Sexual Acts, that is, penetrating the minor female's vagina with his penis and causing his mouth to have contact with the minor female's vagina, by threatening the minor female or placing the minor female in fear, within the territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 2242(1) and 7.

Prior to the sentencing hearing, I reviewed the Presentence Report ("PSR") prepared by United States Probation Officer Angela D. Harris-Butler and the neuropsychological evaluation of Defendant. At the sentencing hearing, I heard the oral statement of the Defendant and argument from counsel as to what would constitute a reasonable sentence satisfying the requirements of 18 U.S.C. § 3553(a). The PSR, the neuropsychological evaluation, Defendant's statement, and the arguments of counsel were considered by me in determining a sentence.

**Calculation of Guidelines Score**

In crafting a reasonable sentence, the trial court must first correctly calculate the range of sentences called for by the United States Sentencing Guidelines ("USSG"). A calculation was initially done by Probation Officer Harris-Butler, and it is included in the PSR. Defendant objected to the Probation Officer's calculation, arguing that the enhancement for Repeat and Dangerous Sex Offender Against Minors under USSG § 4B1.5(b)(1) should not apply. At the hearing, I overruled this objection. I adopt the Probation Officer's calculation as part of my findings of fact.

The Base Offense Level pursuant to USSG  § 2A3.1 is 30. As Specific Offense Characteristics, a total of 4 levels are added—2 levels pursuant to USSG § 2A3.1(b)(2)(B) because the offense involved a minor who had attained the age of twelve years but had not attained the age of sixteen years and 2 levels pursuant to USSG § 2A3.1(b)(3)(A) because the victim was in the custody, care, or supervisory control of Defendant. Additionally, 2 levels are added pursuant to USSG § 3A1.3 because the victim was physically restrained in the course of the offense. The Adjusted Subtotal Offense Level is therefore 36. A Chapter Four Enhancement pursuant to USSG § 4B1.5(b)(1) adds 5 levels to the Adjusted Subtotal Offense Level for a subtotal of 41.

Because Defendant accepted responsibility, the Adjusted Subtotal Offense Level is reduced 3 levels pursuant to USSG §§ 3E1.1(a) and (b). The resulting Total Offense Level is 38. Defendant has no prior convictions, so there are no Criminal History Points to consider and Defendant's Criminal History Category is I.

Accordingly, the Guidelines Sentencing range is 235 to 293 months imprisonment

followed by 5 years to life of supervised release. Notably, the charge to which Defendant pled guilty as stated above carries a sentence of any term of years or life, which defense counsel acknowledged in Defendant's Motion to File Report Under Seal (Doc. 36) and again at the sentencing hearing. Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case, to be determined at a later time. The fine range is $25,000 to $250,000 and Defendant is required to pay a special assessment of $100.

### Statutory Sentencing Factors

A sentencing court is to impose a sentence that is sufficient but not greater than necessary to meet the statutory purposes of sentencing. In meeting that mandate a court must consider the advisory guidelines as well as the factors set forth in 18 U.S.C. § 3553(a)(1)-(7).

*18 U.S.C. § 3553(a)(1)—Nature and Circumstances of the Offense*

The facts relevant to sentencing are contained in the Presentence Report. The parties have not objected to those facts, and I have adopted them as my findings of fact. As detailed in paragraphs 8-17 of the Presentence Report, Defendant repeatedly raped his daughter beginning when she was 14 years old until the conduct was discovered when she was 17 years old. I cannot determine the number of occasions Defendant raped his daughter, but it is obvious from the information provided that the abuse was ongoing. This conduct occurred in the states of Hawaii and Florida.

The child complied with sexual demands of Defendant out of fear that he would inflict physical injury upon her if she refused. This fear was based in part on his explicit threats and in part on his violent behavior in the home. Specifically, Defendant told the victim that

-3-

if she reported his conduct, she would be responsible for destroying the family.

The sexual abuse delivered by Defendant included vaginal and oral penetration, and on occasion the acts were "aggressive and forceful." On at least one occasion Defendant pinned the victim's hands behind her back while vaginally penetrating her, and on another occasion, he wrapped a cord around her neck while administering the abuse. The acts would occur in the family home and in motels when the family was traveling in connection with Defendant's military service. The abuse would occur when the mother was working or when Defendant sent her on errands. Other times, Defendant would commit the abuse behind closed doors while other family members, including the victim's younger sisters, were in the house.

Defense counsel described this case as being among the most egregious in federal court. That description is accurate. The conduct of this Defendant was unusually cruel. Unlike so many crimes prosecuted in this court, there is a direct victim. That victim is a child who was entitled to the protection of a father. Defendant was a father only in a biological sense — he betrayed the trust he owed and deprived the victim of a normal childhood. The Government presented a letter from the victim's mother that described the devastation to Defendant's family caused by Defendant's conduct, but it understates the damage Defendant has inflicted on the victim.

The nature and circumstances of this offense weigh heavily against Defendant.

*18 U.S.C. § 3553(a)(1)—History and Characteristics of Defendant*

In assessing the history and characteristics of Defendant, I have relied on the Presentence Report, the reports of Jacquelyn Olander, Ph.D. and Susan Spicer, Ph.D.,

-4-

statements of counsel, and Defendant's statements at sentencing. The psychological reports are unremarkable. Defendant is of above average intelligence and is not diagnosed as having a mental illness. Defendant has a history of alcohol abuse, but he has no history of mental illness. He scores "high average" or "above average" on intelligence tests and has an "average" memory.

Defendant was one of seven children. At least five of his siblings are doing well; one is a housewife, one an attorney and state representative, one an accountant and pastor, one a government contractor, and one is a banker. Defendant does not know the occupation of one brother.

Defendant has served as a technician in the United States Air Force and attained the rank of E-7. He has twice been awarded the Air Force Commendation Medal and the Kuwait Liberation Medal.

Defendant has shown regret for his actions.

Apart from Defendant's conduct leading to the charges in this case, Defendant's history and characteristics do not weigh heavily one way or the other.

*18 U.S.C. § 3553(a)(3)—Kinds of Sentences Available*

As indicated by the Statutory Guidelines Score and the statutory maximum sentence of life in prison for the offense of conviction, a lengthy prison sentence is required in this case.

*18 U.S.C. § 3553(a)(4) and (5)—Sentencing Guidelines and Policy Statements*

The Court has considered the advisory sentencing guidelines and given them some weight. Although there is a 5-level increase pursuant to USSG § 4B1.5(b)(1), the guidelines

do not account for the duration of the abuse suffered by the victim. The guidelines also fail to adequately take into account the repeated threats made to victim in a successful effort to keep her from seeking help by reporting the abuse. Thus, Defendant was able to continue the abuse.

Neither the Probation Officer nor the parties have cited any relevant Guidelines policy statements.

*18 U.S.C. § 3553(a)(6)—Need to Avoid Unwarranted Sentencing Disparity*

I have given this factor careful consideration. Fortunately, cases similar to this are rare in federal court, making consideration of this factor more difficult to assess. To the extent there is disparity between the sentence imposed in this case and others involving the same offense of conviction, that disparity is accounted for by the facts contained in the Presentence Report and those summarized above. This factor does not weigh in favor of Defendant.

*18 U.S.C. § 3553(a)(7)—Need to Provide Restitution to Victims*

Restitution is an issue in this case, although the amount and method of payment have not yet been established. Regardless of the issue of restitution, the offense requires a lengthy prison sentence. The fact that the sentence imposed exceeds the Guidelines range is given no weight.

*18 U.S.C. § 3553(a)(2)(D)—Provide Defendant with Needed Education, Medical Care*

Defendant does not have a need for education or medical care.

-6-

*18 U.S.C. § 3553(a)(2)(B)—Deterrence, 18 U.S.C. § 3553(a)(2)(C)—Protection of the Public, and 18 U.S.C. § 3553(a)(2)(A)—Reflect the Seriousness of the Offense*

Of primary importance in sentencing is the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A). This factor encompasses all other sentencing factors. The conduct of Defendant was cruel and despicable. A lesser sentence would not meet these statutorily mandated goals of sentencing.

While a very lengthy prison sentence less than that imposed may meet the requirements that it provide protection to the public and deter Defendant from committing crimes in the future, the sentence imposed is necessary as deterrence to others.

### Conclusion

In conclusion, I have considered the statutory purposes of sentencing and all of the statutory factors contained in § 3553(a) in determining the sentence in this case. I have exercised my discretion in determining the weight to be given to each. In the end, I come to the conclusion that a sentence of Life is the correct sentence for Defendant Shawn Alan Marshall. Defendant's Motion to Reconsider Sentence (Doc. 39) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this __23__ day of August, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Shawn Alan Marshall

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

## UNITED STATES OF AMERICA

vs

**Case Number: 6:13-cr-53-Orl-28KRS**

**SHAWN ALAN MARSHALL**

**USM Number: 58253-018**

Stephen J. Langs, FPD
Suite 300
201 S. Orange Ave
Orlando, FL 32801

### JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Count Two of the Indictment. Accordingly, the Court has adjudicated the defendant guilty of the following offense:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. §§ 2242(1) and 7 | Knowingly Causing a Minor Female to Engage in Sexual Acts | November 30, 2012 | Two |

The defendant is sentenced as provided in the following pages of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count One of the Indictment is dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence:

August 21, 2013

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

August 27 , 2013

AO 245B (Rev. 4/09) Judgment in a Criminal Case

**Shawn Alan Marshall**
**6:13-cr-53-Orl-28KRS**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of Life.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshal

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Shawn Alan Marshall
6:13-cr-53-Orl-28KRS

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 10 Years.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The mandatory drug testing requirements of the Violent Crime Control Act are imposed.  The Court orders the defendant to submit to random drug testing not to exceed 104 tests per year.

The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervision that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervision in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;

2. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4. The defendant shall support his or her dependents and meet other family responsibilities;

5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6. The defendant shall notify the probation officer **at least ten (10) days prior** to any change in residence or employment;

7. The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9. The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

AO 245B (Rev. 4/09) Judgment in a Criminal Case

10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11. The defendant shall notify the probation officer within **seventy-two (72) hours** of being arrested or questioned by a law enforcement officer;

12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1. The defendant shall participate in a substance abuse program (outpatient and/or inpatient) and follow the probation officer's instructions regarding the implementation of this court directive. Further, the defendant shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Substance Abuse Treatment Services. During and upon completion of this program, the defendant is directed to submit to random drug testing.

2. The defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or making an obligation for any major purchases without approval of the Probation Officer. You shall provide the probation officer access to any requested financial information.

3. The defendant shall participate in a mental health program specializing in sex offender treatment and submit to polygraph testing for treatment and monitoring purposes. The defendant shall follow the probation officer's instructions regarding the implementation of this court directive. Further, the defendant shall contribute to the costs of such treatment and/or polygraphs not to exceed an amount determined reasonable by the Probation Officer base on ability to pay or availability of third party payment and in conformance with the Probation Office's Sliding Scale for Treatment Services.

4. The defendant shall register with the state sexual offender registration agency(s) in any state where you reside, visit, are employed, carry on a vocation, or are a student, as directed by your probation officer. The probation officer will provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes (F.S.943.0435) and/or the Sex Offender Registration and Notification Act (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248), and may direct you to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

5. The defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate, including: schools, daycare centers, theme parks, playgrounds, etc.

6. The defendant is prohibited from possessing, subscribing to, or viewing, any video, magazine, or literature depicting children in the nude and/or in sexually explicit positions.

7. The defendant shall not possess or use a computer with access to any online service at any location (including employment) without written approval from the probation officer. This includes access through any Internet service provider, bulletin board system, or any public or private computer network system. The defendant shall permit routine inspection of your computer system, hard drives, and other medial storage materials, to confirm adherence to this condition. This inspection shall be no more intrusive than is necessary to ensure compliance with this condition. The defendant shall inform your employer, or other third party who may be impacted by this condition, of this computer-related restriction and the computer inspection provision of the condition.

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Shawn Alan Marshall
6:13-cr-53-Orl-28KRS

8.  The defendant shall submit to a search of your person, residence, place of business, any storage units under the defendant's control, computer, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. You shall inform any other residents that the premises may be subject to a search pursuant to this condition.

9.  The defendant shall cooperate in the collection of DNA, as directed by the Probation Officer.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|------------------|------------|-------------------|
| $100.00 | $0 | *Deferred |

*The determination of restitution is deferred. Pursuant to 18 U.S.C. §3664(d)(5), a date for the final determination of victim losses is to be set by separate order and will not exceed ninety (90) days.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(I), all nonfederal victims must be paid in full prior to the United States receiving payment.

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

The Special Assessment in the amount of **$100.00** is due in full and immediately.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the Schedule of Payments may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                **Case No. 6:13-CR-53-ORL-28KRS**

**SHAWN ALAN MARSHALL,**

     **Defendant.**

_____/

### NOTICE OF APPEAL

Notice is hereby given that Shawn Alan Marshall, Defendant above named, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Judgment in a criminal case entered in this action on August 27, 2013.  Doc 44.

Dated this 29th day of August 2013.

Respectfully submitted,

Donna L. Elm
Federal Defender

 /s/*Stephen J. Langs*
Stephen J. Langs
Assistant Federal Defender
Florida Bar No. 0137227
201 S. Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone: 407-648-6338
Facsimile: 407-648-6095
E-Mail: stephen_langs@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that undersigned electronically filed the foregoing *Notice of Appeal* with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to Andrew Searle, Assistant United States Attorney, this 29th day of August 2013.

 /s/*Stephen J. Langs*                
Attorney for Marshall

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                   ORLANDO DIVISION

 3           Docket No. 6:13-CR-53-ORL-28KRS

 4   . . . . . . . . . . . . . .
     UNITED STATES OF AMERICA    :
 5                               :        Orlando, Florida
              Plaintiff          :        May 8, 2013
 6                               :        11:00 a.m.
                  v.             :
 7                               :
     SHAWN ALAN MARSHAL          :
 8                               :
              Defendant          :
 9   . . . . . . . . . . . . . .

10

11           TRANSCRIPT OF CHANGE OF PLEA
        BEFORE THE HONORABLE KARLA R. SPAULDING
12            UNITED STATES MAGISTRATE JUDGE

13

14   APPEARANCES:

15

16   For the Plaintiff:  Andrew Searle

17

18   For the Defendant:  Stephen J. Langs

19

20

21

22   Court Reporter:    Amie R. First, RPR, CRR
                        AmieFirst.CourtReporter@gmail.com
23

24   Proceedings recorded by FTR Gold Digital Recording.

25   Transcript produced by Computer-Aided Transcription.
```

 1                  P R O C E E D I N G S

 2            THE DEPUTY CLERK:  Case Number

 3   6:13-CR-53-ORL-28KRS, United States of America versus Shawn

 4   Alan Marshall.

 5            Counsel, please state your appearances for the

 6   record.

 7            MR. SEARLE:  Good morning, Your Honor.  On behalf

 8   of the United States, Andrew Searle.  Seated with me at

 9   counsel table is FBI Special Agent Mathew Pagliarini.

10            THE COURT:  Good morning.

11            MR. LANGS:  Good morning, Your Honor.  Steve Langs

12   on behalf of Mr. Marshall who is seated to my left.

13            THE COURT:  Good morning.  I thought I noted a

14   typographical error in the plea agreement.  Has that been

15   corrected?

16            MR. SEARLE:  Yes, Your Honor.  I apologize for

17   that.

18            THE COURT:  That's all right.  Have you had a

19   chance to talk to Mr. Marshall about that?

20            MR. LANGS:  He signed off on it and initialed it.

21            THE COURT:  All right.  I understand that

22   Mr. Marshall wishes to plead guilty to count two of the

23   indictment today pursuant to the plea agreement.

24            MR. LANGS:  He does.

25            THE COURT:  All right.  Thank you very much.

1              I'm just looking up the reference to 18, U.S.C.,

2     Section 7.  Is that the special territory on a maritime

3     jurisdiction?

4              MR. SEARLE:  Yes, Your Honor.

5              THE COURT:  Okay.

6              Okay.  Mr. Marshall, I'm not the judge who is

7     going to sentence you if you plead guilty.  I'm a

8     magistrate judge.  I can conduct a guilty plea proceeding

9     with your permission.

10             I have a document signed by you indicating you

11    agree to let me do that; is that correct?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  What I'm going to do is place you

14    under oath and ask you some questions.  The first group of

15    questions will be designed to make sure you understand what

16    the proceeding is about.

17             And then I'm going to talk to you about what the

18    Government would have to prove before you could be found

19    guilty of the charge in count two.

20             We'll go over the penalties you face and the

21    rights you lose.  We'll also talk about the promises in the

22    plea agreement.

23             At the end, I'm going to ask you about what you

24    did to make sure your conduct violates the crime to which

25    you wish to plead guilty.

1           Because you will be under oath, if anything you

2    tell me is not completely truthful, you could be separately

3    prosecuted for perjury or making a false statement, and

4    anything you tell me here today could be used against you

5    in that prosecution.

6           So if you do not understand something I ask,

7    please let me know.  I'll try to ask it more clearly.

8           Your lawyer will be here throughout the

9    proceeding.  You can speak to him privately at any time.

10           We make a record of what occurs through a digital

11    recording, which is the reason for the microphones.  So if

12    you will continue to answer my questions out loud rather

13    than nodding or shaking your head, we'll be able to capture

14    your answers.

15           Do you have any questions before I go further?

16           THE DEFENDANT:  No, ma'am.

17           THE COURT:  You do not need to stand or raise your

18    hand, but Mr. Jackson is going to place you under oath.

19           (Defendant sworn.)

20           THE DEFENDANT:  Yes, sir, I do.

21           THE DEPUTY CLERK:  Please state your name for the

22    record.

23           THE DEFENDANT:  My name is Shawn Alan Marshall.

24           THE COURT:  Mr. Marshall, have you ever been known

25    by any other name?

1        THE DEFENDANT:  No, ma'am.

2        THE COURT:  How old are you?

3        THE DEFENDANT:  I am 50 years old.

4        THE COURT:  How far did you go in school?

5        THE DEFENDANT:  Basically high school with some

6   post high school both government training and what they

7   call technical college, but I did not graduate.  I have no

8   college degrees.

9        THE COURT:  Okay.  You read, speak, and understand

10  English?

11       THE DEFENDANT:  I beg your pardon, ma'am?

12       THE COURT:  Do you read, speak, and understand

13  English?

14       THE DEFENDANT:  Yes, I do.

15       THE COURT:  Okay.

16       THE DEFENDANT:  I apologize.  I'm having a little

17  bit of difficulty hearing you.  I have a little bit of

18  weakness in my hearing.  I apologize.

19       THE COURT:  I can speak up.  Is that better?

20       THE DEFENDANT:  That's better.  Thank you, ma'am.

21       THE COURT:  All right.  Good.

22       Are you a citizen of the United States?

23       THE DEFENDANT:  Yes, I am.

24       THE COURT:  The next questions are to make sure

25  you're thinking clearly today.

1           Have you ever been under the care of a

2    psychologist or a psychiatrist?

3           THE DEFENDANT:  No.

4           THE COURT:  Are you currently taking medicine of

5    any kind?

6           THE DEFENDANT:  Just antibiotics and

7    decongestants.

8           THE COURT:  All right.  Anything about the

9    underlying cold or the other issues for which you're being

10   treated for antibiotics or the medicine itself making you

11   unable to think clearly today?

12          THE DEFENDANT:  No, ma'am.

13          THE COURT:  Okay.  Other than those two

14   medications you told me about, in the last two days, have

15   you had any other drugs, alcohol, or medication?

16          THE DEFENDANT:  No, ma'am.

17          THE COURT:  Is there anything interfering with

18   your ability to understand what's going on here today?

19          THE DEFENDANT:  No, ma'am.

20          THE COURT:  All right.  I'm going to talk to you

21   next about the charge you propose to plead guilty to which

22   is contained in count two of the indictment.

23          Have you had a chance to review this indictment

24   with your attorney before today?

25          THE DEFENDANT:  Yes, I have.

1          THE COURT:  All right.  Count two alleges that

2     beginning on or about March 16, 2011, and continuing

3     through on or about November 30, 2012, at Patrick Air Force

4     Base in Brevard County in the Middle District of Florida

5     and within the territorial jurisdiction of the United

6     States you knowingly caused a minor female to engage in

7     sexual acts -- that is, penetrating the minor female's

8     vagina with your penis and causing your mouth to have

9     contact with the minor female's vagina -- by threatening

10    the minor female and placing the minor female in fear.

11          This is a violation of Title 18, United States

12    Code, Section 2242 sub 1 and Title 18, United States Code,

13    Section 7.

14          Before you could be found guilty of that offense,

15    the United States would have to prove beyond a reasonable

16    doubt that you caused a minor female to participate in

17    sexual acts; that you did that by threatening her or

18    placing her in fear; that you did these acts knowingly,

19    which means you did them voluntarily -- no one forced you

20    to do them -- and that the acts occurred within the special

21    territorial jurisdiction of the United States.

22          Do you understand what would have to be proved

23    before you could be found guilty of that count?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  You have the right to have the full

```
 1    indictment read, and I'm happy to do that; or you could

 2    waive or give up the reading if you've been through it.

 3            Would you like me to read the rest of the

 4    indictment for you?

 5            THE DEFENDANT:  I'll waive it, ma'am.

 6            THE COURT:  All right.  Have you had enough time

 7    to talk with Mr. Langs, your attorney, about the charges in

 8    the indictment and the plea agreement?

 9            THE DEFENDANT:  Yes, I have.

10            THE COURT:  Are you satisfied with his services

11    representing you in this case?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Mr. Langs, any question as to your

14    client's competency?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Any from the United States?

17            MR. SEARLE:  No, Your Honor.

18            THE COURT:  Mr. Marshall, I find you are competent

19    which simply means able under the law to plead guilty if

20    you want to plead guilty, but you don't have to plead

21    guilty.

22            I have a number of things I need to talk with you

23    about yet.  So if at any point you decide you do not want

24    to plead guilty, let me know.  We'll stop this proceeding,

25    and the case will go on as previously scheduled.
```

```
 1            The next thing I need to talk to you about is the
 2    reason you're proposing to plead guilty.
 3            First, has anyone done anything you think is wrong
 4    or unfair, threatened you in any way to get you to plead
 5    guilty to this charge?
 6            THE DEFENDANT:  No, ma'am.
 7            THE COURT:  Do you want to plead guilty because
 8    you've committed the crime or for some other reason?
 9            THE DEFENDANT:  I did commit the crime, ma'am.
10            THE COURT:  All right.  I have a document entitled
11    plea agreement.  I know you've seen it.  But I'm going to
12    ask Mr. Jackson to hand it to you.
13            I just want to make sure it is your plea
14    agreement, that you've initialed every page, any change,
15    and signed it at the end.
16            MR. LANGS:  Thank you, Your Honor.  We've reviewed
17    the plea.
18            THE COURT:  Thank you.  Is that your plea
19    agreement, Mr. Marshall?
20            THE DEFENDANT:  Yes, ma'am.
21            THE COURT:  Is that the plea agreement of the
22    United States?
23            MR. SEARLE:  Your Honor, may I just have one
24    moment?
25            THE COURT:  Sure.
```

1              MR. SEARLE:  Yes, Your Honor.

2              THE COURT:  Okay.  Mr. Marshall, none of the

3     judges -- sir?

4              MR. LANGS:  I'm sorry, Your Honor.

5              THE COURT:  That's all right.

6              MR. LANGS:  I just want to make sure our record is

7     complete.

8              As you go through that, you'll notice that

9     Mr. Marshall's initials and signature throughout the course

10    of the plea agreement are in different colors.

11             During the course of my explanation, during the

12    course of our discussion with that plea agreement, we used

13    two different colored pens.

14             So he had raised a question about that.  He didn't

15    remember doing that while we were talking about it.  And

16    the initial pages, I went through that.  We stopped, had

17    another substantive discussion about what was going on in

18    terms of the agreement.  I gave him another pen which

19    happened to be a different color.

20             That's the reason for two different colors on that

21    plea agreement.  He mentioned that, I don't remember two

22    colors.  I clearly do.  We discussed that, but we confirm

23    that that is the plea agreement that we went over.

24             THE COURT:  All right.  Mr. Marshall, the

25    different colors are on pages 13, 14, and 15.  I'm happy to

```
 1    give this back to you and let you review it again now to

 2    make sure that, in fact, you agreed to all of those pages.

 3            Would you like to do that?

 4            THE DEFENDANT:  No, ma'am.  I did examine the

 5    initials, and it looks like my handwriting.  So I'm

 6    satisfied, ma'am.

 7            THE COURT:  Okay.  And the same with the end note

 8    that's initialed in a black pen.  That's your initial as

 9    well?

10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  Okay.  None of the judges of the court

12    helped to write the plea agreement.  So it will be up to

13    Judge Antoon to decide whether or not to accept the terms

14    of the plea agreement.

15            Did you read the plea agreement all the way

16    through before you signed it?

17            THE DEFENDANT:  Yes, ma'am, I did.

18            THE COURT:  Did you talk to your lawyer about it

19    before you signed it?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Do you believe you understand the plea

22    agreement?

23            THE DEFENDANT:  Yes, I do.

24            THE COURT:  Have you had enough time to talk to

25    him today about the change -- actually, a correction of a
```

1  typographical error in the penalty/fine provision?  That

2  part --

3           THE DEFENDANT:  Yes.

4           THE COURT:  -- where it said --

5           THE DEFENDANT:  Yes.

6           THE COURT:  -- $25,000 but it's really $250,000?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  Well, then, I'm not going to

9  read the whole plea agreement, but I am going to go over

10 the promises you make to the United States and the promises

11 the United States makes to you.

12           When I'm done, I'm going to ask you if you think

13 there are any other promises that didn't get written in the

14 plea agreement.

15           You agree to plead guilty to count two of the

16 indictment, which is the charge we just went over.

17           At the top of page 2, it tells you the penalties,

18 the maximum penalties you face.  Count one carries a

19 maximum sentence of up to life imprisonment; a fine of up

20 to $250,000 or twice the gain or loss caused by the

21 offense; a term of supervised release of five years up to

22 life; and you would be required to pay a special assessment

23 of $100 at the time of sentencing.

24           MR. LANGS:  Sorry, Your Honor.  You said count

25 one.

1          THE COURT:  Count two.  It says count one.  I'm

2  reading.

3          MR. LANGS:  I noticed that.

4          THE COURT:  Okay.  Let's fix it.

5          MR. SEARLE:  I apologize, Your Honor.

6          MR. LANGS:  I should have --

7          THE COURT:  You know, we got three sets of eyes on

8  it, and we all should have seen it.  I read it ahead of

9  time and --

10          MR. LANGS:  As soon as you read it out loud --

11          THE COURT:  -- caught the fine but not that one.

12  Yep.

13          MR. LANGS:  Wait a minute.

14          That's not right.  One more.

15          MR. SEARLE:  I was wondering about that myself.  I

16  read it earlier.  I should have said something.

17          THE COURT:  As long as we're at a pause, I might

18  as well ask, the charge, the statute doesn't expressly

19  require prove that the victim was a minor, but that's the

20  way it's charged.

21          Is that an -- I'm getting ahead of myself, but is

22  that an essential element?  I know what's been agreed to.

23  Is that an essential element of a 2242 charge?

24          MR. LANGS:  It's not.  I mean, factually.

25          THE COURT:  Factually, it makes a difference.  And

```
 1   for sentencing guideline purposes it will make a

 2   difference.

 3              MR. LANGS:  Right.  Right.

 4              THE COURT:  Okay.  I just want to make sure I was

 5   looking at the right version of the statute.

 6              MR. LANGS:  There's a lot of relevant conduct

 7   that's involved in all of this that is going to come into

 8   play.

 9              THE COURT:  Got it.

10              MR. LANGS:  Yet essential elements of what we've

11   explained, what I've gone over, what we understand.

12              THE COURT:  Okay.  Thank you.

13              All right.  Mr. Marshall, this last change we made

14   in paragraph two at the top of page 2 was simply to

15   correctly indicate which count of the indictment you're

16   intending to plead guilty to.

17              That count, which is count two, carries a maximum

18   sentence of up to life imprisonment, a fine of up to

19   $250,000 or twice the gain or loss as a result of the

20   offense, whichever is greater; a term of supervised release

21   of five years up to life; and you would be required to pay

22   a special assessment of $100 at the time of sentencing.

23              In addition, if anyone was injured, any property

24   was damaged, or anybody lost money as a result of the

25   commission of the offense, you could be required to pay
```

 1   restitution to the victim of the offense and, in fact,

 2   later on in the plea agreement you agree to make full

 3   restitution to the minor female victim described in count

 4   two of the indictment.

 5            At the bottom of page 2, it tells you at the time

 6   of sentencing the remaining count against you, which is

 7   count one, will be dismissed.

 8            Top of page 3 indicates that if the Court accepts

 9   this plea agreement, the United States Attorney's Office

10   for the Middle District of Florida agrees not to charge you

11   with committing any other federal crime known to the United

12   States Attorney's Office at the time the plea agreement was

13   signed that relates to the conduct giving rise to the plea

14   agreement.

15            Paragraph six on page 3 is the agreement to make

16   restitution.  I've already mentioned.

17            Judge Antoon is going to look at something called

18   the sentencing guidelines to help to decide what sentence

19   you should receive.  He's required to look at the

20   guidelines.  He's not required to impose a sentence within

21   the guideline range.

22            Paragraph seven tells you that the United States

23   will recommend that you be sentenced within the guideline

24   range as determined by the Court.

25            Then there are some recommendations on the next

1    page about how the sentencing guidelines should be

2    computed.

3          Paragraph eight says, at the time of sentencing,

4    in the event that there is no adverse information

5    suggesting this recommendation should not be made, the

6    United States will not oppose your request that you receive

7    a two-level subtraction or downward adjustment for

8    acceptance of responsibility.

9          Both the recommendation that the judge sentence

10   you within the guideline range and the recommendation about

11   the acceptance of responsibility reduction are just that,

12   recommendations.

13         If the Court does not follow them, you would not

14   be allowed to withdraw your guilty plea for that reason.

15         Paragraph nine tells you that if you are convicted

16   of this offense, you will be required to comply with the

17   provisions of the Sex Offender Registration and

18   Notification Act which we sometimes refer to as SORNA,

19   S-O-R-N-A.

20         That requires that you keep -- you register and

21   keep your registration current in the place where you live,

22   in the place where you work, and the place where you are in

23   school.

24         Failure to comply with the requirements of SORNA

25   could cause you to be charged with a separate felony

 1   offense.

 2          Moving ahead to page 6, paragraph four, at the

 3   bottom, imposes certain financial disclosure requirements

 4   on you.  You agree to complete and submit to the United

 5   States Attorney's Office within 30 days from the date you

 6   signed this plea agreement an affidavit reflecting your

 7   financial condition which is true and correct.

 8          You further agree to sign any documents requested

 9   by the United States needed to obtain any records from

10   others of assets owned by you directly or indirectly, and

11   you consent to the release of your tax returns for the

12   previous five years.

13          You also agree and authorize the U.S. Attorney's

14   Office to provide to and obtain from the United States

15   Probation Office various financial records for the purpose

16   of making recommendations to the Court and for collecting

17   any assessments, fines, restitution, or other financial

18   obligations ordered by the Court.

19          You also authorize the U.S. Attorney's Office to

20   obtain current credit reports.  On the bottom of page 8, it

21   talks about your right to appeal from a mistake in your

22   sentence.  And I want to talk with you about that for a

23   moment.

24          First, let me tell you that if you plead guilty,

25   you are admitting for all time that you are guilty.  You

1    give up any defenses or excuses you may have.  You give up

2    any motions Mr. Langs has filed or you've talked with him

3    about filing, and you give up the right to come back to

4    this court or go to another court later on and argue that

5    you should not have been found guilty.

6         The right to come back to this court or go to

7    another court is called the right to appeal.  So if you

8    plead guilty, you have no right to appeal from the finding

9    that you are guilty.

10         If you think the judge makes a mistake in the

11    sentence you receive, though, you usually do have the right

12    to ask to have that mistake corrected by filing a direct

13    appeal to the next higher court, which is called the Court

14    of Appeals.

15         Under the plea agreement, you're giving up some of

16    your rights to appeal from a mistake in your sentence.  You

17    can only do that if the sentence is, excuse me, above the

18    guideline range as determined by the Court, more than the

19    maximum permitted by the law, or if the sentence violates

20    the Eighth Amendment to the Constitution, which is your

21    protection against cruel and unusual punishment.

22         If the Government appeals from your sentence,

23    though, then you could appeal for any reason.

24         Do you understand how that limits your right to

25    appeal from a mistake in your sentence?

1          THE DEFENDANT:  Yes, ma'am, I do.

2          THE COURT:  Is that a right you're willing to give

3    up?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Page 9 tells you that this plea

6    agreement only binds the Office of the United States

7    Attorney for the Middle District of Florida not other

8    prosecutors, but the U.S. Attorney's Office agrees to bring

9    your cooperation, if any, to the attention of others if

10   they're asked to do that.

11          No forfeiture applicable to this count,

12   Mr. Searle?

13          MR. SEARLE:  No, Your Honor.

14          THE COURT:  Okay.  Mr. Marshall, those are all of

15   the promises written in the plea agreement.  Do you believe

16   anyone has made you any other promise about what sentence

17   you will receive or anything else that will occur in

18   exchange for your plea of guilty?

19          THE DEFENDANT:  No, ma'am.  No one has made me any

20   promises.

21          THE COURT:  All right.  I've talked a little bit

22   about the sentencing guidelines.  Have you and Mr. Langs

23   talked about how they might apply in this case?

24          THE DEFENDANT:  Yes, ma'am, we have.

25          THE COURT:  I can't tell you today what the

1    sentencing guideline range will be for you because I don't

2    have all the information I need to do that.

3           If you plead guilty, the Court's probation officer

4    will conduct an investigation.  They'll look at what

5    happened here.  They'll look at whether you have any prior

6    criminal history.  They will determine whether you accepted

7    responsibility, things of that nature, and they'll prepare

8    a written report.

9           You and Mr. Langs will receive a copy of the

10   report before the sentencing.  So will the attorney for the

11   United States.

12          If there's anything in the report you think is not

13   correct, Mr. Langs can make objections.  If the objections

14   aren't worked out before the sentencing, then Judge Antoon

15   will hold a hearing, and he'll rule on the objections.

16          Only at the point the report is done and the

17   objections are ruled on will there be enough information to

18   know for sure what the sentencing guidelines are in this

19   case.

20          You have a very good criminal defense attorney

21   representing you, and I know he's giving you his best

22   estimate of the sentencing guideline range; but he can't

23   know for sure until the report is done and the objections

24   are ruled on.

25          So it's important for you to understand that if

1    the sentencing guideline range or the sentence turns out to

2    be something different than you expect it to be, you would

3    not be allowed to withdraw your guilty plea for that

4    reason.

5              Is that clear?

6              THE DEFENDANT:  Yes.  I understand that.

7              THE COURT:  All right.  We don't have parole in

8    the federal prison system anymore.  That used to be a kind

9    of early release program.  Now if you're sentenced to a

10   term in jail, you'll serve almost all, if not all, of any

11   term of imprisonment imposed.

12             I mentioned supervised release as part of a

13   possible sentence.  That's a time a person serves under the

14   supervision of the Court's probation office after getting

15   out of jail.

16             There would be things you had to do and things you

17   could not do as conditions of supervised release.

18             If you violated a condition of supervised release,

19   your supervised release could be taken away.  You could be

20   sent back to jail to serve the term of supervised release

21   in addition to the time you served on the original

22   sentence.

23             Because this is a sex offense crime, after you

24   complete any term of imprisonment imposed, there may be an

25   evaluation to determine whether it is safe to release you

1    back into society.

2         If it's determined that it is not, then you face a

3    potential additional term of civil commitment.  That's not

4    something that we can address at this point of the

5    proceedings, but I need to give you the worst-case basis as

6    I go through penalties.

7         Finally, you will be required to cooperate in the

8    collection of a DNA sample if required under the law.

9         Any other penalties which apply to Mr. Marshall?

10        MR. SEARLE:  No, Your Honor.

11        THE COURT:  All right.  Mr. Marshall, do you

12   understand all the possible penalties that apply if you

13   plead guilty to this charge?

14        THE DEFENDANT:  Yes, ma'am, I do.

15        THE COURT:  I need to tell you next about the

16   rights you give up by pleading guilty.

17        You do have the right to a trial before a jury

18   composed of 12 people.  During the trial, you would be

19   presumed to be innocent.  The United States would have to

20   prove that you were guilty beyond a reasonable doubt.  You

21   wouldn't have to prove anything.

22        During the trial, the witnesses would have to come

23   into court and testify in front of you.  Your lawyer could

24   ask them questions, and he could ask the judge to keep out

25   all or parts of anything the witness has said and all or

 1    parts of any other evidence offered against you.

 2          You would also have the right to have witnesses

 3    and evidence brought into court and presented to the jury

 4    on your behalf.

 5          During the trial, you could testify, talk to the

 6    jury under oath, if you wanted to.  But you'd also have the

 7    right not to testify.  And neither the judge nor the jury

 8    could decide you did anything wrong based on your decision

 9    not to testify.

10          That's your right against self-incrimination.  It

11    gives you the absolute right to remain silent.

12          If you plead guilty and the district judge accepts

13    your plea, do you understand there will be no trial?

14    You'll give up all these rights I've talked about,

15    including the right to remain silent, and the judge will

16    find you guilty based upon your guilty plea?

17          THE DEFENDANT:  I understand.

18          THE COURT:  All right.  If you -- this is a felony

19    offense.  So if you are convicted, you will lose your civil

20    rights.  Those include but are not limited to the right to

21    vote, to keep and bear firearms, to hold public office, and

22    to serve on a jury.

23          There is a right you do not give up by pleading

24    guilty, and that's the right to have a lawyer represent you

25    in this case.

1        If you decide to go to trial, Mr. Langs is going

2   to represent you all the way through the trial and at every

3   other part of the case.

4        If you decide to plead guilty, he's going to

5   represent you all the way through the sentencing.

6        If you think the judge makes a mistake in the

7   sentence you receive and you want to take a direct appeal,

8   the Court would appoint an attorney to represent you for

9   the direct appeal if you couldn't afford to hire someone.

10        I've talked about many things.  Do you have any

11   questions about anything I've talked about?

12        THE DEFENDANT:  No, ma'am.  I don't believe so.

13        THE COURT:  Do you have any questions about

14   anything in the plea agreement I didn't specifically review

15   with you?

16        THE DEFENDANT:  No, ma'am.  I have no questions.

17        THE COURT:  All right.  Tell me what it is you did

18   that makes you guilty of the crime charged in count two of

19   the indictment.

20        MR. LANGS:  If I can, Your Honor, because it's

21   going to be one little correction.

22        THE COURT:  Okay.

23        MR. LANGS:  In terms of the factual basis,

24   obviously Mr. Marshall and I have gone over the factual

25   narrative at pages 11 through 14 of the plea agreement.

1          At one hand, on page 14, the very last sentence, I

2     knew you would find out.  I included an end note in that

3     matter just in terms of the specific language to make that

4     correction.

5          And then back on page 12, in the first full

6     paragraph, the very last sentence where the last sentence

7     begins with, while the family was still living in Hawaii,

8     as a factual matter, Mr. Marshall is contesting that point.

9          In talking with Mr. Searle, he suggested best

10     evidence is contrary to back that up.  But because it

11     really constitutes relevant conduct, it doesn't go to the

12     elements of the offense.

13          I want to make that correction, if you will, or at

14     least that notation in terms of the factual narrative.

15          Otherwise, having gone through the factual

16     statement, through the factual narrative, Mr. Marshall

17     agrees to that.  We certainly agree that the Government can

18     prove these allegations beyond a reasonable doubt.

19          In terms of specifically at Patrick Air Force Base

20     in Brevard County, in the Middle District of Florida, we

21     would agree that he had an unlawful, inappropriate

22     relationship with his minor daughter.

23          I want to make the record clear as to those

24     particular two points constitute relevant conduct,

25     sentencing matters.  They don't go to the essence of the

1  charge.

2       THE COURT:  Well, we're talking about Patrick Air

3  Force Base.  Any dispute that that's where the crime

4  occurred as within the exclusive territorial jurisdiction

5  of the United States?

6       MR. LANGS:  No, ma'am.

7       THE COURT:  All right.

8       MR. LANGS:  As a matter of fact, one of the --

9  just for fun, one of the issues that we talked about in

10  count one alleges Hillsborough County.  And I had some

11  talks with Mr. Searle about that.

12       But in terms of count two, obviously that

13  specifically alleges Patrick Air Force Base.  That is

14  within the territorial jurisdiction of the United States.

15       So having said that, we're comfortable with

16  jurisdiction in the factual statement.  We would abide by

17  the factual statement in light of the sensitivity of the

18  history.  I think the Government did a fairly good job of

19  encapsulating that as well.

20       THE COURT:  All right.  Mr. Searle, some of your

21  colleagues have told me from time to time that if there is

22  an objection to any part of a factual basis, the United

23  States will not go forward.

24       Is the United States willing to proceed on the

25  plea agreement in light of what Mr. Langs has said?

```
 1              MR. SEARLE:  One moment, Your Honor.

 2              THE COURT:  Sure.

 3              MR. SEARLE:  So long as the defendant is willing

 4    to state in his own words --

 5              THE COURT:  Oh, we're going to do that.

 6              MR. SEARLE:  -- what exactly he did.  We don't

 7    actually have any problem with the amendment that Mr. Langs

 8    made in the plea agreement relating to a sentence on page

 9    14.

10              But with respect to the other sentence that he has

11    an issue with, it's the Government's position that we would

12    be able to prove that aspect of the plea agreement.

13              But we're prepared to go forward notwithstanding.

14              THE COURT:  Okay.  You wouldn't withdraw the plea

15    agreement --

16              MR. SEARLE:  No.

17              THE COURT:  -- based upon that dispute?

18              MR. SEARLE:  No, no.

19              THE COURT:  Okay.  All right.

20              All right.  Mr. Marshall, without using names of

21    the victim, tell me in your own words what it is you did

22    that makes you guilty of the crime charged in count two.

23              THE DEFENDANT:  Ma'am, I did have an inappropriate

24    relationship with my daughter.

25              THE COURT:  Well, inappropriate relationship is
```

1  something different than knowingly causing a minor female

2  to engage in sexual acts.

3          Did you do that?

4          THE DEFENDANT:  Yes, ma'am, I did.

5          THE COURT:  Did you threaten her or otherwise

6  place her in fear to get her to do that?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Was she under 18 years of age when

9  these events occurred?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Anybody force you to do this?

12         THE DEFENDANT:  No.  No one forced me to do this.

13         THE COURT:  You did it voluntarily?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  And did the acts alleged in count two

16  -- and there are dates in there -- occur within Patrick Air

17  Force Base, the grounds of Patrick Air Force Base?

18         THE DEFENDANT:  Yes, it did occur.

19         THE COURT:  All right.  Factual basis from the

20  United States?

21         MR. SEARLE:  Your Honor, I would just ask the

22  defendant, did the sexual acts include his penetrating the

23  minor female's vagina with his penis and cause his mouth to

24  have contact with the minor female's vagina?

25         THE DEFENDANT:  Yes, it did.

```
 1              THE COURT:  Okay.  Thank you.

 2              Does the United States rely on the facts in the

 3     plea agreement as its factual basis?

 4              MR. SEARLE:  Yes, Your Honor.

 5              THE COURT:  All right.  Mr. Marshall, with the

 6     exception of the sentence on page 12 that Mr. Langs

 7     referred to and considering the correction made in the end

 8     note, are these facts correct?

 9              THE DEFENDANT:  Yes, ma'am.

10              THE COURT:  All right.  Well, I find based upon

11     what you tell me and the facts that the United States says

12     it could prove that the facts are sufficient to allow you

13     to plead guilty, if you still want to do that.

14              I told you when we started you did not have to

15     plead guilty.  Now we're getting to the point where I'm

16     going to ask you what you'd like to do.

17              First, is there anything you want to tell me or

18     ask me that bears on your decision to plead guilty that we

19     haven't talked about?

20              THE DEFENDANT:  If I might have a moment to

21     reflect, ma'am.

22              THE COURT:  Sure.

23              Have you had enough time to talk to your lawyer?

24              THE DEFENDANT:  Yes, ma'am, I have.

25              THE COURT:  Is there anything that you want to
```

```
 1   tell me or ask me that bears on your decision to plead

 2   guilty that we haven't talked about?

 3             THE DEFENDANT:  No, ma'am.

 4             THE COURT:  Do you need to change anything you

 5   told me under oath which you think might not have been

 6   completely truthful?

 7             THE DEFENDANT:  No, ma'am.  Everything I've told

 8   you has been truthful.

 9             THE COURT:  After I started speaking up into the

10   microphone, have you been able to hear me clearly?

11             THE DEFENDANT:  Yes.  It's been --

12             THE COURT:  Okay.

13             THE DEFENDANT:  It's been satisfactory.  Thank

14   you.

15             THE COURT:  Any part of the proceeding that you

16   could not hear that you'd like us to go back over?

17             THE DEFENDANT:  No, ma'am.  I heard it.  If I

18   didn't hear it, I would have asked.

19             THE COURT:  All right.  Would you like to talk to

20   your attorney further before I ask you how you'd like to

21   plead?

22             THE DEFENDANT:  No, ma'am.  I believe we're all

23   right.

24             THE COURT:  All right.  Does the victim wish to be

25   heard at this point?
```

1              MR. SEARLE:  No, Your Honor.

2              THE COURT:  All right.

3              All right.  Mr. Marshall, how then do you plead to

4    the charge in count two of the indictment?

5              THE DEFENDANT:  Ma'am, I plead guilty.

6              THE COURT:  Are you freely and voluntarily

7    entering this plea of guilty?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  I determine that this plea of guilty

10   is knowingly, intelligently, and voluntarily made.  It's

11   not the result of force, threats, or promises except for

12   the promises contained in the plea agreement.

13             I will recommend that Judge Antoon accept both

14   your guilty plea and the plea agreement.

15             Sentencing is usually at least 75 days from today,

16   because that's how long it takes to do the presentence

17   report.

18             I don't have a sentencing date for you, but

19   Mr. Langs will let you know when it's set.  He'll also

20   explain the presentence process to you.

21             Anything else we can take care of for the United

22   States?

23             MR. SEARLE:  No, Your Honor.  Thank you.

24             THE COURT:  For the defense?

25             MR. LANGS:  No, Your Honor.  Thank you.

1          THE COURT:  Mr. Searle, if you would, file the

2    plea agreement -- refile the plea agreement with the

3    changes we've made when you get back to your office.

4          MR. SEARLE:  Yes, Your Honor.

5          THE COURT:  Thank you very much.  We're in recess.

6          (Proceedings adjourned at 11:36 a.m.)

7

8              C E R T I F I C A T E

9

10         I certify that the foregoing is a correct

11   transcript from the record of proceedings in the

12   above-entitled matter.

13

14   s\Amie R. First, RPR, CRR

15

16

17

18

19

20

21

22

23

24

25

1            UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
2                   ORLANDO DIVISION

3            Docket No. 6:13-CR-53-ORL-28KRS

4    . . . . . . . . . . . . . .
     UNITED STATES OF AMERICA    :
5                                :           Orlando, Florida
              Plaintiff          :           August 21, 2013
6                                :           9:40 a.m.
                 v.              :
7                                :
     SHAWN ALAN MARSHAL          :
8                                :
              Defendant          :
9    . . . . . . . . . . . . . .

10

11           REDACTED TRANSCRIPT OF SENTENCING
             BEFORE THE HONORABLE JOHN ANTOON, II
12                 UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15

16   For the Plaintiff:  Carlos Perez-Irizarry

17                        Andrew Searle

18

19   For the Defendant:  Stephen J. Langs

20

21

22   Court Reporter:    Amie R. First, RPR, CRR
                        AmieFirst.CourtReporter@gmail.com
23

24   Proceedings recorded by mechanical stenography.

25   Transcript produced by Computer-Aided Transcription.

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  This is the case of United

 3   States of America versus Shawn Alan Marshall.  Case Number

 4   6:13-CR-53.

 5            Will counsel please state their appearances for

 6   the record?

 7            MR. PEREZ:  Good morning, Your Honor.  Carlos

 8   Perez for the United States.  I understand that the

 9   Government has made a late appearance in this case.  I

10   apologize to the Court.

11            Another AUSA was getting the file for me from the

12   AUSA who is supposed to be here.

13            THE COURT:  So you don't have the file yet?

14            MR. PEREZ:  Right.  The file is coming.  I'm

15   familiar with the case.

16            THE COURT:  I think Mr. Irick might have it for

17   you.

18            MR. PEREZ:  Thank you, Your Honor.

19            MR. LANGS:  Good morning, Your Honor.  Steve Langs

20   on behalf of Mr. Marshall, and he appears to my left.

21            THE COURT:  The attorney who is assigned to this

22   case is Mr. Searle, the attorney for the Government.  I

23   want Mr. Searle to be present at the conclusion of this

24   hearing.

25            MR. PEREZ:  Yes, Your Honor.
```

1          THE COURT:  Sir, would you stand and state your

2   name, please?

3          THE DEFENDANT:  Shawn Alan Marshall.

4          THE COURT:  And, Mr. Marshall, would you raise

5   your right hand and be sworn, please?

6          THE DEFENDANT:  Yes, sir.

7          (Defendant sworn.)

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Why don't you come forward and stand

10  at the lectern with your attorney.

11         Mr. Marshall, have you had any pills, drugs,

12  medication, or alcohol within the past 48 hours?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Have you been under the care of a

15  psychiatrist or psychologist for a mental or emotional

16  disorder in the past?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Do you have any reason to believe that

19  you suffer from such a disorder now?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Are you thinking clearly and

22  exercising your best judgment this morning?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Mr. Marshall, on May 8, 2013, you

25  entered a plea of guilty to count two of the indictment

1    charging you with knowingly causing a minor female to

2    engage in sexual acts in violation of Title 18, United

3    States Code, Sections 2242(1) and 7.  The Court has

4    previously accepted your guilty plea and adjudged you

5    guilty of that offense.

6            We've now reached that stage in the proceedings

7    where I must ask questions of you, your attorney, and the

8    attorney for the Government.

9            First, have you had an opportunity to read and

10   discuss the presentence report?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Do you have any objections as to the

13   factual accuracy of that report?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  Do you wish to make any objections to

16   the probation officer's application of the guidelines?

17           MR. LANGS:  Your Honor, we just have the one

18   objection.

19           THE COURT:  Okay.  Do you want to argue that

20   objection, or do you want to rest on your written

21   objections?

22           MR. LANGS:  No.  I'll just briefly say I don't

23   have a point of authority for Your Honor.  I don't have any

24   governing case law for Your Honor.  I guess I would take

25   the position this really isn't -- the argument that I'm

1   making is an issue of first impression in that we have a

2   plea agreement.

3          THE COURT:  Tell me how applying the additional

4   levels is inconsistent with the provision, the guideline

5   provision.

6          MR. LANGS:  Well, I think that the idea that I'm

7   positing is the concept of relevant conduct.  4B1.5, I

8   would suggest, as a policy matter is aimed at those

9   individuals that exhibit or show a pattern, a history of

10  this type of behavior.

11         THE COURT:  Well, isn't that -- how is that

12  inconsistent with the facts of this case?

13         MR. LANGS:  Because I think the presentation of

14  the case captures that relevant conduct for purposes of the

15  guidelines, meaning had the Government, for example,

16  charged in the indictment one instance from Patrick Air

17  Force Base rather than alleging a large period, if you

18  will --

19         THE COURT:  Well, don't you agree that they could

20  have prosecuted each and every act?

21         MR. LANGS:  Sure.

22         THE COURT:  Okay.  And they didn't?

23         MR. LANGS:  Absolutely.  And they didn't.

24         THE COURT:  So why is that not a pattern?

25         MR. LANGS:  Well, the benefit -- it is a pattern,

1    certainly, because the charge here is the abuse of his

2    minor daughter.  That's kind of the ongoing continuing

3    charge, at least that's the position I take.

4         And in light of the plea agreement, the way that

5    we structured it, in capturing all of this behavior, I

6    think is kind of the benefit of what we had to do here.

7         So I agree with you, Your Honor.  4B1.5, on the

8    face of it, would certainly apply.  I agree with you on

9    that point.

10        But in trying to advocate for a proper or the most

11   beneficial application of the guidelines to Mr. Marshall, I

12   think under these unique circumstances, the way that the

13   Government charged it, complained in the complaint, the

14   plea agreement, everything has been captured in this

15   relevant conduct notion such that 4B1.5 would essentially

16   be double counting, if you will, adding on.

17        But otherwise, yeah, there's certainly a pattern

18   here.  That's what's been charged.  That's what

19   Mr. Marshall has admitted to and accepts responsibility

20   for.

21        And, again, it's an issue of first impression.

22   And I don't have any authority to -- the annotations

23   certainly didn't help.  And I'm left standing here just

24   pitching the argument.

25        And unfortunately for Mr. Marshall in that regard,

1   should the Court rule against that position, obviously we

2   don't have the opportunity to appeal it.  So it's Your

3   Honor's decision in the first instance from start to end to

4   say yay or nay.

5            THE COURT:  Does the Government wish to be heard?

6            MR. PEREZ:  Yes, Your Honor.

7            We stand by the recommendation of the probation

8   office and the analysis of the probation office.  I think

9   that Mr. Langs' request is more one of leniency than a

10  legal argument.

11           I think that how the charges were structured in

12  this case and the plea agreement was structured in this

13  particular case, those two factors do not preclude or

14  prohibit the application of the guideline portion in this

15  particular case.

16           In fact, as the Court correctly pointed out, we

17  could have charged these individual acts in separate

18  counts, and they could have been charged in multiple

19  districts.

20           THE COURT:  Yeah.

21           MR. PEREZ:  It's relevant conduct in the sense

22  that the presentence report encompasses and includes all

23  those facts which could have been charged individually, and

24  there is nothing inconsistent with the sentencing

25  guidelines or within the policy of the Sentencing

1   Commission and how this Court should view or should

2   consider the relevant conduct which includes all those

3   facts.

4          And, therefore, the Government stands by the

5   presentence report and objects to the defendant's request.

6          THE COURT:  The objection is overruled.

7          Are there any other objections, Mr. Langs?

8          MR. LANGS:  No, sir.

9          THE COURT:  Do you agree, Mr. Marshall?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Does the Government have any

12   objections?

13          MR. PEREZ:  No, Your Honor.

14          THE COURT:  The Court adopts the factual

15   statements and guideline applications contained in the

16   presentence report.

17          As to the controverted guideline application, the

18   Court adopts the position of the probation office as stated

19   in the addendum and, therefore, determines that the

20   advisory guidelines are total offense level 38; criminal

21   history category I; 235 to 293 months imprisonment; 5 years

22   to life -- 5 years to life supervised release; restitution

23   to be determined; $25,000 to $250,000 fine; $100 special

24   assessment.

25          Is the victim or a representative of the victim in

```
 1   the courtroom at this time?

 2           MR. PEREZ:  No, Your Honor.

 3           THE COURT:  Do you know of any reason why the

 4   Court should not now proceed with imposition of sentence?

 5           MR. LANGS:  Not from defense, Your Honor.

 6           THE COURT:  Do you wish to make a statement or

 7   present any information in mitigation?

 8           MR. LANGS:  If I may.

 9           We have degrees of cases that come before your

10   Court.  And as one appears before you regularly, Your

11   Honor, this probably is at or near the top of

12   egregiousness.  And this is a tough case.  And hopefully --

13           MR. PEREZ:  Your Honor, if I may -- I apologize

14   for interrupting.  The Court asked me if the victim was in

15   court.

16           Mr. Searle went out to get the agents and the

17   agents actually have a letter statement from the victim.

18           THE COURT:  Okay.  I'll take that up in a minute.

19           MR. PEREZ:  Okay.  Thank you, Your Honor.

20           THE COURT:  You may proceed, Mr. Langs.

21           MR. LANGS:  Thank you, Your Honor.

22           And I think, I hope, the Court had a chance to

23   read and go over Dr. Spicer's and Dr. Olander's written

24   report.  I think that is a meaningful substitute of any

25   written sentencing memorandum I could present.
```

1    We all know why we're here.  I perennially ask two

2    questions.  What is it that my client did wrong?  And what

3    are we going to do about it?

4    We know what Mr. Marshall did wrong, and he will

5    be the first to tell you that it was despicable and

6    reprehensible.

7    And I think the bigger question now is what are we

8    going to do about it?  Well, we know the guidelines suggest

9    19 to 24 years, approximately.  The Court certainly has up

10   to the rest of Mr. Marshall's natural life to play with.

11   And I hope that when either Mr. Searle or

12   Mr. Perez address Your Honor that rather than arguing or

13   rehashing what it is that he did and rather than rearguing

14   and rehashing the call and need for retribution and

15   punishment that they from their standpoint can offer

16   something constructive in terms of what we should do in a

17   case like this and what we should do for Mr. Marshall.

18   I can't offer you anything other than the

19   intangibles.  I have the benefit.  I have the advantage.

20   You all don't.  I get to spend quality time with

21   Mr. Marshall at the jail.  I get to spend that quiet time

22   with him at the jail.  I get to develop a relationship with

23   Mr. Marshall through my position as his lawyer.

24   And when I first met him, he was a wreck.  And in

25   the six months that he's been in Orange County Jail, even

 1   that little amount of time away has given him an

 2   opportunity, I hope, to suggest that he understands what he

 3   did, how he got here, what must happen, what is going to

 4   happen, and why it is.

 5          The damage has been done.  You'll hear from him,

 6   Your Honor.  He is profusely going to apologize.  But I

 7   think he does so now clear minded, having had a chance to

 8   get away from alcohol, having had a chance to at least

 9   appreciate some of the demons that he's suffering.

10          And I would advocate the position that his -- from

11   a humanist perspective, from an organic perspective that

12   are we going to exercise -- and I feel strongly about

13   this -- a sense of taking the easy path and merely

14   punishing him and protecting the neighborhood by locking

15   him up and throwing away the key, or are we going to invest

16   something in Mr. Marshall as a human being?

17          He's a decorated military man.  He was with the

18   Air Force for 20-some odd years.  He had a family.  He had

19   a wife.  He had an upbringing.  He has a father.  He has

20   all of those things that we all bring to the table.  But he

21   did something extremely evil, and now he has to pay for

22   that.

23          And in my talks with him, I hope he understands

24   that.  I have my 19-year-old daughter.  I have been posited

25   with people, how can you stand there and represent that

1    type of individual?

2           And I have a personal belief that everyone is

3    entitled and has the right to have one person, at least one

4    person, stand on his behalf.  And I take that badge with

5    honor at this point.

6           Because really, Your Honor, in terms of actually

7    imposing that sentence, considering all the factors

8    enumerated at 3553(a), trying to mete out a decision that

9    satisfies the calls for punishment and deterrence,

10   protection and rehabilitation, Mr. Marshall, I hope, is

11   that individual who is more than worthy of redemption and

12   that he can atone for his wrongdoing.

13          He's going to have a long time in prison to do

14   that.  But I don't want this to be a piling on matter.  And

15   when the Court accepts his daughter's impact statement,

16   when the Government gets up here and wags its finger at

17   Mr. Marshall and calls him a bad man, I think from our

18   perspective, my side of the table, yes, he did those

19   things.  He did evil, heinous, atrocious things, and we are

20   in that position where we're dealing with the quote,

21   unquote, "worst of the worst," if you will.

22          But even then there is something good within

23   Mr. Marshall.  There is something that is redeeming.  And

24   I'm hoping the Court, in addition to Dr. Olander's report

25   and in addition to the presentence report and in addition

1    to all the totality of the circumstances that Mr. Marshall

2    brings to the table, that at a minimum we have some

3    illustration of empathy, some type of compassion, something

4    that meets the statutory requirements in what Congress

5    calls for you to do.

6              I'm hoping it will be something less than what the

7    guidelines call for.  If he didn't have that five-level

8    enhancement, for example, he would be at that 11-year mark.

9    Maybe that's the appropriate sentence in this case.  Maybe

10   that's sufficient, not greater than necessary, to meet the

11   goals of sentencing.

12             But it's a complex case.  This isn't shades of --

13   I shouldn't say that.  This isn't just merely black and

14   white.

15             THE COURT:  Why is it complicated?

16             MR. LANGS:  Because it's easy to say, throw away

17   the key, lock him up and be done with him.

18             He's 50 years old.  And I think a sentence of 20

19   years or something less than that might afford him the

20   opportunity to become a better person while behind bars and

21   have the chance to get out.  And maybe, just maybe,

22   reestablish a relationship, in particular, with his

23   daughter.  I hope.  I hope.

24             And at this point, all I can let Mr. Marshall know

25   is that at least if he -- when he goes to prison, he goes

```
 1   so with my hopes and with my prayers.  And I feel the wiser

 2   and I feel the better for having gotten to know

 3   Mr. Marshall in the sense that he certainly is a prime

 4   example of the frailties and failings of a human being.

 5           And the question is -- and, fortunately, Your

 6   Honor, I don't have to answer it today -- what are we going

 7   to do about it?  But I hope that Mr. Marshall will take the

 8   opportunity the Court gives him and uses it to better

 9   himself in light of the terrible, terrible acts that he

10   committed.

11           So having said that, Mr. Marshall, this would be

12   your opportunity to address His Honor.  And is there

13   anything that you'd like to say before he imposes a

14   sentence?

15           THE DEFENDANT:  Your Honor, I do understand that

16   what I did was horrible.  That should not happen to a

17   child.  That should not happen within a family.

18           I wish I had the opportunity to stand here and

19   begin to explain how sorry I am to my family, to █████, to

20   the little ones, how I destroyed an entire family, an

21   entire organization.

22           As Mr. Langs says, since I've been sitting there

23   for all of this time, and to think, it's just that.  It's

24   just with the constant drinking, the constant alcoholism,

25   that demon on my back, the depression.  And then the
```

1   deviance that I saw in my family as a child, I just -- I

2   don't know how, but I didn't see it as horribly sick and as

3   wrong as it was.  I was constant -- it's like I had a

4   constant cloud behind or in front of me.

5          I look forward to the opportunity to get some kind

6   of treatment, therapy, counseling, to further understand

7   myself and to start making fundamental changes that changed

8   the very essence of who I am in certain areas of my being,

9   of my life.

10         And with -- you know, just hoping for mercy to be

11   able to step out and to right that wrong, to -- you know,

12   if nothing else, to get out there and help someone else to

13   avoid falling into that pit, to avoid them, you know,

14   letting all of these things pile on your back and control

15   who they are and lead them down such a grim road.

16         Like I said, I can't begin to explain, you know,

17   how sorry I could tell -- not just ██████, but Jeri and my

18   little ones and everyone, everyone.  My country even.

19         I -- you know, that's still a part of me.  As I'm

20   standing now on the opposite side of where I used to be.  I

21   used to be on that side, fighting along, and now I'm on the

22   other side.

23         Anyway, I don't mean to drag on, sir, but yes.  It

24   was horribly, horribly wrong, and I would do anything to

25   work to become a new human being.

```
 1              MR. LANGS:  May we sit while the Government

 2    addresses you, Your Honor?

 3              MR. PEREZ:  Your Honor, let me just correct the

 4    record as to the statement that we have.  The victim impact

 5    statement is from the victim's mother.

 6              And we also have a declaration of victim losses

 7    that we are going to provide to the probation office.  And

 8    I will announce it to the Court in terms of the

 9    restitution.

10              Your Honor, my sentencing allocution is going to

11    be along the lines of an entire movement from actually

12    whose principle and best known expert -- it happens to be

13    Gabriel García Márquez from Colombia.  It's called the

14    magical realism.  And I'm going to be going back into the

15    future and back and forth.

16              Yesterday we had a luncheon which I attended in

17    which we talked about the dire state of the judicial

18    budget, the public defenders, the Department of Justice.

19              As I have said many times when I used to come to

20    court before I became a manager -- and I will continue to

21    say it today -- that I know no better lawyers in the Middle

22    District of Florida, and in Orlando in particular, than

23    those lawyers working for the public defender's office.

24              While we ask members of the executive branch and

25    at times members of the federal judiciary who I have
```

1   traveled overseas with to promote the good of law and

2   changes in the judicial system in Latin America and other

3   parts of the country, we always tell them, look at us, how

4   we do things.  Look at our budget.  We are always open 24

5   hours for business; criminal and, if need be, in civil

6   cases.

7          Nowadays, because of the sequester, we cannot do

8   that.  So it is extremely difficult for us -- as members of

9   the executive branch to go down south, down range, as they

10  say in the military, and actually ask them to reform their

11  system to promote the rule of law and democracy when we in

12  the United States may no longer be able to do that.

13         Which then brings me to the second point.

14  Coincidentally, yesterday, I got an Email from one of my

15  neighbors.  And the Email was about the first day of school

16  in 2007 in an elementary school in Arkansas.

17         The teacher had 27 students in her history class.

18  And what she did with the permission of the superintendent

19  of the public school system, the school principal, and the

20  parents was to remove the 27 desks.

21         When the kids walked into the classroom, there

22  were no desks.  And what the teacher told them was, you

23  have to tell me how you earn having a desk for you to see

24  it in the classroom.

25         At the end of the day, there were no desks in the

1    classroom.  The kids didn't have the answers.  The parents

2    didn't have the answers.

3          Then 27 men in uniform, veterans of the United

4    States Armed Forces walked in with the 27 desks.  And what

5    the teacher told them and told the kids and the parents

6    was, you earn to have a desk and sit on your desk in class

7    because of the sacrifices those 27 men did on your behalf.

8          Those 27 men were members of the United States

9    Army.  I would venture to say the United States Navy and

10   the United States Air Force from World War II and Korea and

11   Vietnam.

12         The defendant dishonored the uniform and the oath

13   that he took when he became a member of the United States

14   Air Force to protect the people, the citizens of the United

15   States, and this country.

16         Not only did he dishonor the uniform, he

17   dishonored his country.  But what is sad is that he

18   dishonored his own daughter.  That is the most troubling

19   aspect of this case.

20         And Mr. Langs talked about what do we do?  I have

21   spent some quality time with the defendant, quiet time of

22   the defendant.  Let's not throw the key.

23         Because the defendant, according to what Mr. Langs

24   would like us to believe, is that at the end of the day he

25   has some social redeeming value.  That is between the

1   defendant, Mr. Marshall, his conscience, and God.

2           The United States is recommending, pursuant to the

3   terms of the plea agreement, a sentence within the

4   guideline range, a guideline sentence, as calculated by the

5   probation office.

6           And at this point in time, I am going to read the

7   letter, and I'm going to make sure that Mr. Langs gets a

8   copy and that the Court file gets a copy.

9           The letter starts, Dear Sir, (The Judge),

10          I urge you to consider the full extent of what

11  Shawn Marshall has done.  He tortured and destroyed his

12  oldest daughter, physically, mentally, and emotionally, and

13  his other children with emotional stress and trauma.

14          Physically by raping █████ repeatedly, over and

15  over, in the course of a four-year period, making her

16  submit to sexual conduct and depravity.

17          Mental torture by threatening her with a

18  statement, do not tell your mom.  It will hurt her and

19  destroy the family.

20          Emotionally, by knowing that what Shawn was doing

21  to her was inhumanly wrong but not knowing what to do about

22  it.

23          Along with the reason as to why he was doing this

24  to her, no matter what answer that comes forth as to why,

25  there is no justification for what Shawn has done.

1          Sir, my ▮▮▮ was a sweet, beautiful child, full

2   of love and grace, loyal and a steadfast to many.  Now

3   she's not.

4          She never had a chance to fulfill a young girl's

5   dreams, her first crush, her first boyfriend, her first

6   innocent kiss but instead has to live with the knowledge

7   that the man -- that the man whom she once called father

8   took that away against her will.  The memory and constant

9   reminder is horrible and ugly that will always stay with

10  her.

11         Was there any choice given to her?  No.  Why would

12  the courts or anyone consider any mercy or leniency for

13  Shawn?  He never showed any to his daughter.

14         Did Shawn give any consideration to ▮▮▮?  No.

15  Not for any one of his other five children and myself, his

16  wife.

17         Did Shawn give any thought of how the act of

18  raping an -- and I'm going to say -- redact from this

19  point, and I am going to ask the Court to redact the first

20  name of the victim that I mentioned pursuant to the Victims

21  and Witness Protection Act.

22         THE COURT:  The motion is granted.

23         MR. PEREZ:  Did Shawn give any thought of how the

24  act of raping blank would destroy her or the rest of the

25  family?  No.

1          Just the thought acknowledged that Shawn did so

2    without any remorse for he did rape blank many times.  He

3    does not care and will never have remorse for any of his

4    actions.  Because I, for one, have experienced it.

5          For years, I prayed that a change would come with

6    my love and my faith in God.  But now I know that it would

7    never have come about.

8          Shawn didn't want to change.  So, again, I ask,

9    why should there be any thought of giving him, Shawn, a

10   lesser punishment other than the maximum?

11         The fact that blank will live with what Shawn did

12   to her for the rest of her life.  Now, my blank live in

13   shame, hate, remorse, because of Shawn.

14         Shame, because of what he did to her repeatedly.

15   She can hardly look at me, her mother, or be around me for

16   the fear of judgment.  Shawn put that fear and shame in

17   blank's mind and heart.

18         I would state until my dying days -- I will state

19   until my dying days, there will never be any judgments from

20   me towards my blank.

21         I cry for my little girl continuously, for her

22   pain, her heart-stopping sobs of wanting to know why Shawn

23   did this to her.

24         Shawn wasn't a random stranger whom he caused her

25   pain.  No, it was her father.  So the pain is deep.

1        Shawn Marshall did that.  Every day she will wake

2   up with the knowledge that she is forever changed.  Healing

3   from this may never come about.  Accepting it, she has no

4   choice.

5        Let me say it, that is to be sin.  Shawn Marshall

6   did that to blank, his daughter.

7        Remorse so fills -- remorse so fills her that she

8   has applied self-separation from her brothers and sisters

9   because she feels she was the catalyst in destroying the

10  family she so loves.  This, again, is completely untrue.

11       Shawn destroyed us all.  The brothers and sisters

12  have and will continue to reach out to her with open arms

13  of love, but her pain is so great it's so hard for her to

14  accept.  Shawn Marshall has done that.

15       Hate, yes, hate, for what Shawn did to her.  If

16  you ever had a chance to look into my blank's eyes, you

17  would see the same turmoil that goes on within her mind,

18  knowing that God has ordained that children should respect

19  and honor their father and mother.  But coming to the truth

20  of this, Shawn had no respect for her as a person.

21       Hate dwells deep within my blank, for she had

22  believed Shawn love her as a father should love his child

23  but in turn hurt her in the most despicable, grievous

24  manner.  Shawn Marshall did that.

25       As to the other children, my sons have lost their

1   foundation.  They followed and took advice from a person

2   whom they thought was showing them the true path of being a

3   man.  So I pray daily that they will still trust me when I

4   say you're good.  It was his choice of doing that

5   horrendous act and his alone.  That is no reflection on

6   you, my sons.  Shawn Marshall did that.

7          As for my younger daughters, they're destroyed,

8   even though they try to be brave for Mom.  They were thrown

9   into a nightmare with no understanding as to how or why it

10  was happening.  Shawn Marshall did that to his youngest

11  daughters.

12         The mental and emotional trauma is still being

13  worked through with therapist.  Shawn Marshall did that.

14         As for me, well, I have a long road ahead,

15  children to help stand up tall and straight, small hands to

16  take ahold of and lead them the best I can.  For I am one

17  of his victims also and have to go to therapy myself.

18         I have been put into financial catastrophe of

19  immeasurable proportion because of accountability of being

20  married to him for so long.  Having to be fully responsible

21  for all of the accumulated debt, no matter if it's joint or

22  not.  I'm supporting and providing for my younger children

23  alone, whether it is food, clothing, medical, and housing.

24         Having no access to any of Shawn's income,

25  military retirement, has been denied by him.  It is

1    payback, if you would, for stopping him.

2            Not being given a full power of attorney to help

3    ascertain any kind of resolution in how to solve the

4    financial burden or to obtain a continuous medical plan to

5    cover the recovery of my children's mental well-being has

6    been denied.  (These two would come from the military

7    retirement.)

8            THE COURT:  I'm not understanding that.  What is

9    she saying?

10           MR. PEREZ:  I think that -- let me read it again,

11   and I will tell the Court what I think she's saying.

12           Not being given a full power of attorney to help

13   ascertain any kind of resolution in how to solve the

14   financial burden or to obtain a continuous medical plan to

15   cover the recovery of my children's mental well-being has

16   been denied.

17           THE COURT:  She is saying the defendant did not

18   give her the power of attorney?

19           MR. PEREZ:  Yes.  She doesn't have a full power of

20   attorney.  And she's also saying that the defendant denied

21   her and the family the benefit of his medical pension.

22           MR. LANGS:  I'm going to disagree with that point,

23   Your Honor.

24           MR. PEREZ:  I'm just reading what the letter says.

25   She's basically saying that the money to pay for the mental

1  therapy would be coming from the military retirement.

2  Because if I read this letter correctly, she's saying that

3  the only source of income for her would be the military

4  pension.

5          Then the next sentence reads, this is another form

6  of control towards me and the children and revenge for

7  standing against Shawn in what he did.

8          Shawn Marshall has done that, and he's continuing

9  to do so.  This dilemma will affect the younger girls in so

10  many ways.  I could start listing them, but one just has to

11  stop and think and it will become obvious.

12          This will also affect my blank because not being

13  given the proper authority, I cannot help her in any

14  medical capacity which she's still entitled to.

15          I cannot give my children any hope that tomorrow

16  will be easier.  All I can give them is that I will

17  continue to fight.  And that fight will also include giving

18  my blank some small justification that a wrong has been

19  punished.

20          It will never return her innocence, never

21  completely overcome her pain.  However, it might give her a

22  small amount of comfort and peace later on in years knowing

23  that Shawn Marshall can never do what he did to another

24  young girl or her sisters what he did to her.

25          Eternity in prison would not be enough of a

 1   punishment for Shawn Marshall.  But then, again, my blank

 2   will have an eternity of knowing that some justice was

 3   served.

 4          So, again, I respectfully request that you, sir,

 5   will take in all that I have said and apply it towards the

 6   justice that my blank should have.

 7          I have spent some quality time with Shawn in the

 8   quiet environment of the jail, and he has some value.

 9   That's what Mr. Langs said, paraphrasing.

10          As I have said many times, judges have the most

11   difficult role in the criminal justice system because of

12   judges' duty to impose a sentence.

13          Would I refer to Mr. Marshall as a man?  Maybe

14   because biologically he was born a man.  Would I refer to

15   him as a man or as a father?  Of course not.

16          What father, what man, what human being, meaning

17   the terms man and father, would ever do that to his

18   daughter?  Not a man and not a father.

19          One would truly define what a father should be,

20   what a father ought to be, what a man should be, what a man

21   ought to be, how a father should act, ought to act, how a

22   man should act, ought to act, in the presence of his

23   daughter, with a daughter.

24          How can we try to justify or explain that because

25   of some alcoholism that made me do it?  How human beings

1    justify their behavior at times escapes me.

2         And the only thing that I think is it is just an

3    excuse.  What happened to the victim was done by the person

4    who got entrusted to raise her, to provide for her, to

5    pamper her, to spoil her, to educate her.  As a man and as

6    a father, Mr. Marshall didn't do any of that.

7         At the end of the day, what we have is a girl who

8    was raped, tortured, submitted to unspeakable acts by

9    obeying her God entrusted with guiding her through life.

10   She'll never have that.

11        Pursuant to the terms of the plea agreement, the

12   United States recommends a sentence within the guideline

13   range.

14        THE COURT:  What is your understanding --

15        MR. PEREZ:  Your Honor, if I may, let me just

16   state the restitution amount, if I may.

17        The declaration of victim loss, it says, I, blank,

18   with the address, am a victim in the above-referenced case,

19   and I believe that I'm entitled to restitution in the total

20   amount of $400.

21        My specific losses as a result of this offense are

22   as follows:  At least two tanks of gas going to and from

23   interviews and meetings along with attending two court

24   hearings.  Also missing approximately a month of work.

25        I have been compensated by insurance and another

1    source with respect to all of a portion of my losses in the

2    amount of zero dollars.

3            Signed, blank Marshall.

4            THE COURT:  There was a reference in the

5    presentence report to the children not being in school.

6            Can you tell me what the facts are?

7            MR. SEARLE:  Your Honor, on behalf of the United

8    States, Andrew Searle.  I would just like to apologize on

9    the record to the Court as well as the Court staff and to

10   defense counsel for my tardiness.

11           THE COURT:  I appreciate the apology.  We'll take

12   the matter up at the end of this hearing.

13           MR. SEARLE:  My understanding is that the children

14   were home schooled up until they were being taken into

15   custody by DCF.  I don't know what the status is from

16   there, but they were being home schooled up until that

17   point.

18           THE COURT:  They were?

19           MR. SEARLE:  Yes.

20           THE COURT:  Is that the probation officer's

21   understanding as well, that they were being home schooled?

22           PROBATION OFFICER:  That is information provided

23   to me by the defendant.

24           THE COURT:  Do you know any of the details of

25   that?

1              PROBATION OFFICER:  No, sir.

2              THE COURT:  Who was providing it?

3              PROBATION OFFICER:  No.

4              MR. SEARLE:  And, Your Honor, according to the

5    case agent, they are now in school, in public school.

6              THE COURT:  And this abuse started at age 14?

7              MR. SEARLE:  Yes, Your Honor.

8              THE COURT:  When did it end?

9              MR. SEARLE:  I believe it continued until November

10   of 2012 when the child was, I think, 17.

11             THE COURT:  Okay.  Thank you.

12             Mr. Langs, do you wish to be heard in rebuttal?

13             MR. LANGS:  I guess just briefly, just as a

14   technical matter, Mr. Marshall has always stood ready to

15   help out in terms of domestic issues.

16             This idea of the power of attorney, I reached out

17   to his wife a number of times.  They've made clear they

18   didn't want to have any communication with us.

19             The logistics of having whatever form they need

20   signed, I mean, it's not as if Mr. Marshall is

21   intentionally or maliciously withholding anything.  He's

22   asked time and time again how do I provide my wife with

23   that necessary ability?  And we stand ready to do that.

24             However, the dependency court in Brevard County

25   wants to handle it, DCF, his wife.  That's kind of an issue

1   there.

2          THE COURT:  Do you know whether there's been a

3   power of attorney signed?

4          MR. LANGS:  No, there hasn't been because none of

5   the appropriate forms have been sent or mailed to

6   Mr. Marshall.  I don't know the appropriate form that they

7   want.

8          You know, I know that, from my experience, a

9   general form that you buy from Staples isn't necessarily

10  honored wherever you have to go.  So without having any

11  communication with the family, because they don't want to

12  talk to me, I don't know how best to help them.  I can

13  certainly act as a liaison however they want in this

14  regard.

15         But I don't want the Court thinking he's sitting

16  in Orange County saying I'm not going to do anything.  So

17  for his benefit, yeah, anything he can do to help out his

18  wife, certainly.

19         In terms of restitution, $400, we certainly don't

20  object to that if that's the claim.  I haven't read that.

21  I haven't received a copy of that.  Just listening to

22  Mr. Perez talk.  But we certainly don't object to $400 in

23  this instance.

24         And ultimately again, Your Honor, I think the hard

25  part about this case is what to do.  And Mr. Perez, as

1  always, is very eloquent.  But in terms of his allocution,

2  I didn't hear any suggestion other than to say by the plea

3  agreement give him a guideline sentence in terms of what we

4  need to do here.

5          So again, Your Honor, you've been doing this an

6  awfully long time.  I agree with everyone here in the

7  courtroom, this is a bad case.  But ultimately the question

8  falls to you in terms of what we need to do here.

9          THE COURT:  Thank you, Mr. Langs.

10         The Court will take a recess.  I have another

11 hearing at 11:00.  So I will be back before 11:00 to

12 conclude this hearing.

13         (Recess at 10:33 a.m.)

14         THE COURT:  Please come to the lectern with your

15 client, Mr. Langs.

16         I'm sorry.  The Court will be in recess just for

17 one minute.

18         (Recess at 10:56 a.m.)

19         THE COURT:  You know, this is the first sentence

20 that I've imposed since the attorney general announced the

21 other day that we as a system, as a Government need to

22 revisit the question of sentencing.  The frequency and

23 length of sentences of incarceration have caused him to

24 reassess what we're doing.  And most judges I know agree

25 with that sentiment, and I do too.

 1            Often the guideline range is extreme given the

 2     nature of the crime committed.  I don't recall ever having

 3     exceeded the recommended guideline range, although

 4     post-Booker at least in this court and I believe in the

 5     courts of my colleagues, not just here in the Middle

 6     District but everywhere, downward departure has become

 7     commonplace.  It's become routine.

 8            At the beginning of this hearing, Mr. Langs

 9     observed that this case is at the high end of a scale of

10     egregiousness of cases that we have here in federal court.

11     And that's certainly an accurate observation based on my

12     tenure.

13            In fact, the case -- the facts of this case are

14     more egregious than any I've had to address as a federal

15     judge.  I've not had one like this.  Similar cases are,

16     unfortunately, not rare in state court where I served

17     before coming here.

18            And, interestingly, the facts of this case would

19     require a more severe sentence in state court than called

20     for by the guidelines, based on the facts, not necessarily

21     the charge.

22            I've considered the guideline factors.  I've

23     considered the recommendation of the Government.  I've

24     considered the argument of defense counsel.  And I always

25     pay close attention to the wonderful product that I'm

1   provided by the probation office.

2         I've considered the nature and circumstances of

3   the offense, which are spelled out in detail in the

4   presentence report to which there has been no objection,

5   and I've adopted as my findings of fact in this case.

6         Those facts could be summarized as -- in a

7   number -- using a number of adjectives, I suppose.

8         But as I said, in the end, this is egregious, more

9   egregious than any I've seen here.  They include really

10  depriving a child of a normal life.  I don't know how a

11  child can ever recover from what this child has endured.

12        There may be some psychologist somewhere that says

13  that's possible; but my guess is, based on a lot of

14  experience in handling these kinds of cases, that you

15  couldn't find one.

16        Human will and human ability to endure is amazing,

17  and perhaps, perhaps this child is one that is resilient

18  enough to have some kind of decent life.  I certainly hope

19  so.

20        The child was repeatedly raped for at least two

21  years.  I don't know how many months.  Sometimes it was

22  done with threats.  Sometimes it was done with restraint.

23  Sometimes it was done with violence.

24        This is accounted for in the guidelines, of

25  course, but here is the man whose role it was to protect

1    this child inflicting this kind of pain and torture, mental

2    and physical abuse on his own daughter.

3         There's no way to know what kind of toll that took

4    on the other members of the family, I suppose.  But I doubt

5    that they have much hope of ever erasing all of this.

6         I've taken into account the defendant's history

7    and characteristics and the fact that he was in the

8    military and got a Commendation Medal with an oak leaf

9    cluster.

10        I've taken into account the comments of both

11   attorneys who say that he has value.  And I agree with

12   that.  I think every human life has value.

13        Nonetheless, the conduct of this defendant is

14   despicable and his conduct, what he's actually done,

15   overshadows what value he might have in the future.

16        At one point during allocution, he said he wanted

17   to right this wrong.  Oh, wouldn't that be wonderful if it

18   were possible?  It's not possible to right this wrong.

19        I've taken into account the psychological reports,

20   which I don't find remarkable.  They say that Mr. Marshall

21   has remorse, and I don't doubt that he does.

22        Taking into account sentencing disparity and the

23   need to avoid sentencing disparity is difficult because,

24   really, we don't see these kind of cases in federal court.

25   It's a first for me.  And I don't know that my colleagues

1    here in the -- at least this division have had such a case.

2    But I'm cognizant of that certainly.

3            I've also taken into account the need to provide

4    restitution.

5            But I think that the guidelines do not adequately

6    reflect the seriousness of the offense.  I don't think they

7    adequately promote respect for the law.  I don't think that

8    they adequately provide just punishment in this case.  I

9    think they probably go some distance in affording adequate

10   deterrence to criminal conduct.

11           The Court has asked defendant why judgment should

12   not now be pronounced; and after hearing defendant's

13   response, the Court finds no cause to the contrary.

14           The parties have made statements on their behalf,

15   and the Court has reviewed the presentence report and

16   advisory guidelines.

17           Pursuant to Title 18, United States Code, Sections

18   3551 and 3553, it's the judgment of the Court that the

19   defendant, Shawn Alan Marshall, is hereby committed to the

20   custody of the Bureau of Prisons to be imprisoned for a

21   term of life.

22           Upon release from imprisonment, you shall, if you

23   ever are released, you'll serve ten years on supervised

24   release.  While on supervised release, you shall comply

25   with the standard conditions adopted by the Court in the

1   Middle District of Florida.

2           In addition, you shall comply with the following

3   special conditions.

4           You shall participate in a substance abuse

5   program, outpatient, inpatient, or both, and follow the

6   probation officer's instructions regarding implementation

7   of this directive.

8           Further, you shall contribute to the cost of these

9   services not to exceed an amount determined reasonable by

10  the probation office's sliding scale for substance abuse

11  treatment services.

12          During and upon completion of this program, you're

13  directed to submit to random drug testing.

14          You shall participate in a mental health program

15  specializing in sexual offender treatment and submit to

16  polygraph testing for treatment and monitoring purposes.

17  You shall follow the probation officer's instructions

18  regarding implementation of this directive.

19          Further, you shall contribute to the cost of such

20  treatment and polygraph examinations not to exceed an

21  amount determined reasonable by the probation officer based

22  on ability to pay or availability of third-party payment

23  and in conformance with the probation office's sliding

24  scale for treatment services.

25          You shall register with the state sexual offender

 1    registration agency in any state where you reside, visit,

 2    are employed, carry on a vocation, or are a student as

 3    directed by the probation officer.

 4          You shall provide the state officials with all

 5    information required under Florida Sexual Predator and

 6    Sexual Offender Notification and Registration Statutes,

 7    Florida Statute 943.0435, and Sex Offender Registration and

 8    Notification Act, Title I of the Adam Walsh Child

 9    Protection and Safety Act of 2006, Public Law 109-248, and

10    may direct you to report to these agencies personally for

11    required additional processing such as photographing,

12    fingerprinting, and DNA collection.

13          You shall have no direct contact with minors --

14    that is, children under the age of 18 -- without written

15    approval from a probation officer and shall refrain from

16    entering into any area where children frequently congregate

17    including schools, day care centers, theme parks,

18    playgrounds and the like.

19          You are prohibited from possessing, subscribing to

20    or viewing any images, videos, magazines, literature, or

21    other materials depicting children in the nude or sexually

22    explicit positions.

23          You shall not possess or use a computer with

24    access to any online service at any location, including

25    employment, without written approval from the probation

1   officer.

2          This includes access through any Internet service

3   provider, bulletin board system, or any public or private

4   computer network system.

5          You shall permit routine inspection of your

6   computer system, hard drive, and other media storage

7   materials to confirm adherence to this condition.

8          This inspection shall be no more intrusive than is

9   necessary to ensure compliance with this condition.

10          You shall inform your employer or other third

11   party who may be impacted by this condition of this

12   computer-related restriction and the computer inspection

13   provision of this condition.

14          You shall submit to a search of your person,

15   residence, place of business, any storage units under your

16   control, computer, or vehicle conducted by the United

17   States Probation Office at a reasonable time and a

18   reasonable manner upon reasonable suspicion of contraband

19   or evidence of a violation of a condition of release.

20          You shall inform any other residents that the

21   premises may be subject to search pursuant to this

22   condition.  Failure to submit to a search may be grounds

23   for revocation.

24          You shall be prohibited from incurring new credit

25   card charges or any credit charges, opening lines of

1    credit, or obligating yourself for any major purchases

2    without approval of the probation officer.  You shall

3    provide the probation officer access to any requested

4    financial information.

5            Having been convicted of a qualifying felony, you

6    shall cooperate in the collection of DNA.

7            The court mandatory drug testing requirements of

8    the Violent Crime Control Act are imposed.  You shall

9    submit to random drug testing not to exceed 104 tests per

10   year.

11           The determination of restitution is deferred.

12   Pursuant to Title 18, United States Code, Section

13   3664(d)(5), the final determination of victim losses shall

14   be set under separate order and will not exceed 90 days.

15   That will be set upon motion of the Government.

16           Based on the financial status of the defendant,

17   the Court waives imposition of a fine.  It's further

18   ordered that you shall pay the United States a special

19   assessment of $100, which is due immediately.

20           The guideline range exceeds 24 months and the

21   reason for imposing the selected sentence -- well, that

22   doesn't apply.

23           The Court departs from the guideline range for the

24   following reasons.

25           I've outlined those generally.  Upon the motion of

```
 1    either party, I will be glad to submit them more

 2    articulately in writing.

 3            The Court has accepted the plea agreement because

 4    it's satisfied that the agreement adequately reflects the

 5    seriousness of the actual offense behavior and that

 6    accepting the plea agreement will not undermine the

 7    statutory purposes of sentencing.

 8            Under the plea agreement, the defendant has

 9    entered a guilty plea to count two in return for dismissal

10    of count one.  Accordingly, it's ordered that count one of

11    the indictment be dismissed.

12            The Court, having pronounced sentence, does

13    counsel for the defendant or the Government have any

14    objection to the sentence or the manner in which the Court

15    pronounced sentence?

16            MR. PEREZ:  Not from the United States.

17            MR. LANGS:  I guess just to make my record, Your

18    Honor, we would object just to enumerate as to a procedural

19    matter and in terms of calculating the guidelines and as a

20    substantive matter having imposed a sentence above the

21    calculated guideline range.

22            I think the other objection the Eleventh Circuit

23    generally looks for is lack of notice in terms of the Court

24    contemplating an upward variance or an upward adjustment or

25    departure in this case.
```

1        So we object --

2        THE COURT:  What do you say about the last

3    objection, Mr. Perez?

4        MR. PEREZ:  Your Honor, the last objection from

5    the defendant in terms of his argument for lack of notice,

6    I think that as far as the sentence being imposed within

7    the statutory limits the Court has asserted to do that.

8        In terms of how the Court viewed the arguments by

9    my counsel under the circumstances and after the Court

10   listened to the arguments and to the areas presented, the

11   Court then was in a position to actually make that

12   determination of going above what the advisory guideline

13   range was.

14       THE COURT:  Mr. Langs, I'll give you 24 hours to

15   -- I'll recess this hearing, and I'll give you 24 hours to

16   provide me with a memo.  If you want more, I'll give you

17   more.

18       MR. LANGS:  It's not a law, Your Honor.  The

19   Eleventh Circuit says that we, as the defense, are on

20   notice as is because of the advisory nature of the

21   guidelines that you can impose up to the maximum.

22       THE COURT:  If you make that objection, I want you

23   to -- it's like a motion, and I want you to provide me with

24   authority.  If you want to withdraw the motion or the

25   objection, you may.

1          MR. LANGS:  I'm preserving it.  I'm raising it to

2     preserve.

3          THE COURT:  Okay.  Then you submit whatever

4     authority you have to support that, and you have 24 hours.

5     This will be reset on Friday.  Miss Darley will give you a

6     time.

7          MR. PEREZ:  And the United States then will reply

8     in writing.

9          THE COURT:  If you'd like or you can appear in

10    person.  I don't know what authority there's going to be.

11         MR. PEREZ:  I think essentially it's going to be

12    considered that because of the advisory nature of the

13    guidelines.

14         THE COURT:  I think Mr. Langs is telling me one

15    thing but says he's doing another.

16         MR. LANGS:  I know what the law is.  I'm raising

17    it to preserve it.  I'm going to lose that argument.  I

18    know I am.  But I have to raise it to preserve it;

19    otherwise, I'll be ineffective.

20         Because the Court has imposed a maximum sentence

21    above the calculated guideline range, we're arguing lack of

22    notice.  The Eleventh Circuit has clearly said I lose that

23    point.

24         THE COURT:  Eleventh Circuit says what?

25         MR. LANGS:  I lose that point.  You don't have to

```
 1   give notice.

 2           MR. PEREZ:  Because the advisory nature of the

 3   guidelines.

 4           THE COURT:  You give me authority.

 5           MR. LANGS:  It will be very short.  Friday is

 6   furlough Friday for me.

 7           THE COURT:  Okay.  You can do it tomorrow then.

 8   What time tomorrow?

 9           MR. LANGS:  I've got a hearing at 10:00 and

10   another sentencing just like this at 1:30 with Judge

11   Honeywell.

12           THE DEPUTY CLERK:  11:00.

13           MR. LANGS:  I'll be with Judge Baker, I think.

14           THE COURT:  At 11:00?

15           MR. LANGS:  9:00 tomorrow morning?

16           THE COURT:  What time do you start?  What's your

17   first hearing?

18           MR. LANGS:  Change of plea.  I can be here at

19   9:00.

20           THE COURT:  Change of plea at what time?

21           MR. LANGS:  I think it's at 11:00.

22           THE COURT:  Be here at 9:30.  Oh, be here at 9:15.

23           MR. LANGS:  9:15.  I'll submit something this

24   afternoon.  That's not a problem.

25           And the last point is, restitution, do we need to
```

```
 1   defer it?  I think there was a claim for $400.
 2           THE COURT:  I don't think there was any -- I don't
 3   think either one of you were listening.  I said that I
 4   would set a hearing on that based on motion by the
 5   Government.
 6           MR. LANGS:  That's what I'm saying, there's a
 7   restitution claim already.
 8           MR. PEREZ:  Your Honor, but that restitution
 9   amount only includes expenses.  It does not include
10   anything beyond gas or mileage.  It needs to include and
11   address the victim's need for health counseling.
12           THE COURT:  You can address that.
13           MR. PEREZ:  We'll follow up with the motion on
14   that.  Yes, Your Honor.
15           THE COURT:  Thank you.  We're in recess.
16           (Proceedings adjourned at 11:17 a.m.)
17
18                 C E R T I F I C A T E
19
20       I certify that the foregoing is a correct
21   transcript from the record of proceedings in the
22   above-entitled matter.
23
24   s\Amie R. First, RPR, CRR
25
```

```
 1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                       ORLANDO DIVISION

 3                Docket No. 6:13-CR-53-ORL-28KRS

 4   . . . . . . . . . . . . . .
     UNITED STATES OF AMERICA    :
 5                               :          Orlando, Florida
               Plaintiff         :          August 22, 2013
 6                               :          10:28 a.m.
                    v.           :
 7                               :
     SHAWN ALAN MARSHAL          :
 8                               :
               Defendant         :
 9   . . . . . . . . . . . . . .

10

11              TRANSCRIPT OF CONTINUED SENTENCING
              BEFORE THE HONORABLE JOHN ANTOON, II
12                 UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15

16   For the Plaintiff:  Carlos Perez-Irizarry

17                       Andrew Searle

18

19   For the Defendant:  Stephen J. Langs

20

21

22   Court Reporter:    Amie R. First, RPR, CRR
                        AmieFirst.CourtReporter@gmail.com
23

24   Proceedings recorded by mechanical stenography.

25   Transcript produced by Computer-Aided Transcription.
```

```
 1                    P R O C E E D I N G S

 2          THE COURT:  This is a continuation -- go ahead and

 3   announce the case.  I'm sorry.

 4          THE DEPUTY CLERK:  This is the case of United

 5   States of America versus Shawn Alan Marshall.  Case Number

 6   6:13-CR-53.

 7          Will counsel please state their appearances for

 8   the record?

 9          MR. SEARLE:  Good morning, Your Honor.  On behalf

10   of the United States, Andrew Searle.  With me is Assistant

11   United States Attorney Carlos Perez.

12          MR. LANGS:  Good morning, Your Honor.  Steve Langs

13   on behalf of Mr. Marshall.  He appears to my left.

14          THE COURT:  Okay.  Since we adjourned yesterday, I

15   have reviewed the submissions that the parties made

16   following yesterday's proceedings.

17          The Court announced then that the guidelines did

18   not adequately address 3553 factors and that was the reason

19   for a sentence outside the guideline range.

20          The presentence report provides that there is no

21   basis for a departure.  There was no discussion regarding a

22   departure.  And it was not the Court's intention that the

23   sentence be categorized as a departure but that it was a

24   variance.

25          Because the guidelines are advisory only, it was
```

```
 1   not my belief that notice of intent to impose a sentence
 2   outside the guideline range was required.  I don't believe
 3   counsel thought that either.
 4        Defense counsel announced at the commencement of
 5   the proceedings that the Court -- and this is a quote based
 6   on my memory, not on looking at the transcript, but
 7   something to the effect that the Court had life to play
 8   with in imposing a sentence.
 9        So I think that's an indication that it was
10   understood that a sentence outside the guidelines might be
11   imposed.
12        Also, just as a matter of practice in this
13   division of this large district, the Courts often impose
14   sentences that are variances below the guideline range
15   without any notice.  I mean, it's -- I haven't seen
16   anything -- I haven't had a notice post-Booker and I don't
17   recall even having one pre-Booker.  But I may have.  I know
18   I haven't had any since.
19        Having said that, if defense counsel represents in
20   good faith that he did not believe an outside-the-range
21   sentence was a possibility because of lack of notice --
22   which as I said, I can't accept without more because it's
23   contrary to the statement that was made by counsel -- I
24   will reopen the proceeding and allow argument and evidence.
25        Mr. Langs?
```

1          MR. LANGS:  Well, I know the rule, Your Honor.  I

2   know the law at the time.

3          THE COURT:  So you're just doing it to preserve?

4          MR. LANGS:  Yeah.  So I'm asking to change the

5   rule if we're going to give an upward departure.  I would

6   like to --

7          THE COURT:  Well, I just did.

8          MR. LANGS:  I would like advance notice of that.

9          THE COURT:  I just did.

10          MR. LANGS:  But yeah.

11          THE COURT:  I just did.

12          MR. LANGS:  And I'd raise an objection to preserve

13   it for further appellate review.

14          THE COURT:  I just gave you the opportunity to

15   make argument or present evidence.

16          MR. LANGS:  In terms of reconsidering?

17          THE COURT:  Well, what you're telling me

18   implicitly -- you haven't used these words.  And maybe you

19   don't want to.

20          But the only reason that you would be entitled to

21   notice, I would think, would be to avoid any prejudice.  So

22   if you're prejudiced, if you're making a representation to

23   me that you're somehow prejudiced by not getting notice, I

24   will accept you at your word, and I will give you an

25   opportunity to present whatever it is you would have

 1   presented had you had notice.

 2          MR. LANGS:  May I have a moment to let that

 3   digest, Your Honor?

 4          THE COURT:  Yes.

 5          And while you're thinking about it, I'll ask the

 6   court reporter to find that statement in the record that

 7   you made yesterday.

 8          MR. LANGS:  If I may, Your Honor, I'm thinking out

 9   loud as a strategic matter, is there anything I could have

10   given you that would have mitigated your calculus in that

11   sentence?  Is there anything above and beyond what was

12   already presented that would have changed your mind?

13          And I guess I'm asking, is there anything I can

14   give you above and beyond the evaluations and the record

15   that was presented?

16          And in light of the -- I mean, the only thing I

17   can ask for in terms of prejudice -- and I appreciate what

18   you're asking -- you know, strategically, was there another

19   type of evaluation that could have been provided?  Was

20   there another angle, a mental health angle, that I could

21   have provided in terms of mitigation?

22          Is there anything that would have -- that would

23   change your mind from a life sentence, I guess?  Because

24   that would be the only strategic --

25          THE COURT:  My sentence was based on what I had

1    before me at the time.

2          MR. LANGS:  Yeah.  And now --

3          THE COURT:  You've got a neurological evaluation,

4    neuropsychological evaluation, from Dr. Olander.  And that

5    was based on testing done by another Ph.D.

6          MR. LANGS:  Dr. Spicer helped her.  She was a part

7    of that, too.

8          It's kind of a unique question, if the Court is

9    allowing me to do a do-over.

10          THE COURT:  Well, I'm saying -- I'm saying to you,

11    number one, can you in good faith tell me that you would

12    have expected notice for an upward --

13          MR. LANGS:  No.  I know the Court was free to give

14    a life sentence.  And I'm -- I know the rule.

15          THE COURT:  Number two, if I had given you notice,

16    even though you weren't entitled to it, just as a matter of

17    courtesy or an abundance of fairness -- I don't know,

18    however you want to call it -- what would -- is there

19    anything that you would have done?

20          Is there anything that you left in your office

21    that you wanted to bring to my attention?

22          MR. LANGS:  I don't know.  I don't know.  Because

23    had there been notice, maybe I would have done something

24    differently.  I don't know.

25          THE COURT:  Well, think about it.  I'm not going

1    to open it up for you to re-investigate.  But if you can

2    think of something that you forgot to bring up or you

3    didn't think was important but now you do --

4         MR. LANGS:  Do you think there was something

5    missing for your consideration?  I think that what we gave

6    you was a solid presentation.

7         THE COURT:  Okay.  I'll accept that.  Okay.

8         MR. LANGS:  I guess the only thing I would ask is,

9    if the Court would, it indicated, requested by the parties,

10   you might be inclined to do a sentencing memorandum.

11   Because of the severity of the sentence, I would ask for

12   that, if at all possible.

13        In all likelihood, we'll probably appeal the

14   sentence, and I want to make sure we give the Eleventh

15   Circuit a sufficient record to review, if the Court is

16   willing to do that for us.

17        THE COURT:  Yeah.  I will work on that, and it

18   will be more complete than what I have given you and what I

19   will do now.

20        But I will say that I always have the statute in

21   front of me when I evaluate a presentence report and

22   information that I get at pre -- at sentencing in trying to

23   determine a sentence that is reasonable.

24        As you know, certain factors inform the Court is

25   to -- what is required to meet the goals of sentencing.

1    And the first and one of the most important is the nature

2    and circumstance of the offense, circumstances of the

3    offense.  And the facts relevant to sentencing are

4    contained in the presentence report.

5         The parties haven't objected to the -- those

6    facts, and the Court has adopted them as its findings of

7    fact.

8         As detailed in paragraphs eight through seventeen

9    of the presentence report, the defendant repeatedly raped

10   his daughter beginning when she was 14 years old until the

11   conduct was discovered when she was 17 years old.  This

12   conduct occurred in the States of Hawaii and Florida.

13        The child complied with the sexual demands of her

14   father out of fear that he would inflict physical injury

15   upon her if she refused.  This fear was based in part on

16   his threats and in part on his violent behavior -- his

17   explicit threats and in part on his violent behavior in the

18   home.

19        Specifically, defendant told the victim that if

20   she reported the conduct, he would be responsible for --

21   she would be responsible for destroying the family.

22        Sexual abuse delivered by the defendant included

23   vaginal and oral penetration.  On occasions, the acts were

24   aggressive and forceful.  On at least one occasion,

25   defendant pinned the victim's hands behind her back while

1  vaginally penetrating her.  And on another occasion, he

2  wrapped a cord around her neck while administering the

3  abuse.

4        The acts would occur in the family home and in

5  motels when the family was traveling in connection with

6  defendant's military service.

7        The abuse would occur when the mother was working

8  or when the defendant sent her on errands.  Other times,

9  the defendant would commit the abuse behind closed doors

10  with other family members, including the victim's two

11  younger sisters, in the house.

12        Defense counsel described the case as being among

13  the most egregious in federal court.  That description

14  fits.

15        The conduct of this defendant was unusually cruel.

16  Unlike so many crimes prosecuted in this court, there is a

17  direct victim.  The victim is a child who is entitled to

18  the protection of a father.  Defendant was a father only in

19  a biological sense.  He betrayed the trust he owed and

20  deprived the victim of a normal childhood.

21        The Government presented a letter from the

22  victim's mother that described the devastation caused by

23  defendant's conduct, but it understates the damage that the

24  defendant has inflicted on the victim.

25        The nature and circumstances of this case weigh

1   heavily against -- this offense weigh heavily against the

2   defendant.

3          We don't know the number of times that he raped

4   the child, but it was over a long period of time.  And I

5   don't think that is accounted for in the guidelines.  It

6   wasn't an incident.  It wasn't a couple of incidents.

7          I know there's an enhancement in the guideline

8   calculation, but I don't think it adequately addresses the

9   conduct that occurred between the child's 14th and

10  17th year.

11         History and characteristics of the defendant is

12  another factor that I put a lot of -- I gave a lot of

13  thought to.  In assessing the characteristics of the

14  defendant, the Court has relied on the presentence report,

15  the reports of Jacquelyn Olander, Ph.D., and Dr. -- I don't

16  remember her first name -- Susan Spicer, Ph.D., statements

17  of counsel, and the defendant's statements at sentencing.

18         Defendant has no history of mental illness and

19  scores high average or above average on intelligence tests.

20  He has average memory.

21         He's one of seven children.  At least five of

22  defendant's siblings are doing well.  One is a housewife;

23  one is an attorney and state representative; one an

24  accountant and pastor; one a government contractor; and one

25  a banker.  Defendant does not know the occupation of one

1    brother.

2         The psychological reports are unremarkable.  He's

3    not been diagnosed with having any known mental illness.

4    He has a history of alcohol abuse.

5         Defendant has served as a technician in the United

6    States Air Force and attained the rank of E-7.  He has

7    twice been awarded the Air Force Commendation Medal and the

8    Kuwait Liberation Medal.

9         All agree that the defendant has shown regret for

10   his actions.  Apart from the facts in this case,

11   defendant's history and characteristics do not weigh

12   heavily one way or the other.

13        The Court has considered the kinds of sentences

14   available, and the only sentence available is a lengthy

15   term of incarceration.

16        The Court has considered the need to avoid

17   unwarranted sentence disparity.  I think I commented on

18   that yesterday.

19        This is such an unusual case that I have nothing

20   really to compare it with personally.  To the extent that

21   disparity is measured by the guideline range, I've

22   explained why I think this case is so egregious that the

23   sentence should fall outside the guidelines.

24        I don't know what we're going to do with

25   restitution, but it's not a factor that weighs heavily,

1   really weighs.  It has no weight with regard to the

2   sentence that I have imposed.

3          I think this sentence is necessary to reflect the

4   seriousness of the offense.  I think anything less would

5   not do that.  I think it's necessary to promote respect for

6   the law and to provide just punishment for the egregious

7   crimes of the defendant.

8          I think it's necessary to afford adequate

9   deterrence to criminal conduct by this defendant,

10  specifically and generally.

11         Could I get the file?

12         Counsel, while we're waiting, I apologize for the

13  scheduling problem this morning.  This case seems to invite

14  problems.  For whatever reason, the marshal's office did

15  not get him here on time.  They informed me, and I hope you

16  were informed immediately after I was.

17         MR. PEREZ:  Yes, Your Honor.  That was the case.

18  And those things happen in terms of transportation from the

19  different facilities.

20         THE COURT:  Defendant is hereby remanded to the

21  custody of the United States Marshal to await designation

22  by the Bureau of Prisons.

23         To the extent permitted by your plea agreement,

24  you have the right to appeal from this sentence within

25  14 days from this date.  Failure to appeal within the

1   14-day period shall be a waiver of your right to appeal.

2          The Government may file an appeal from this

3   sentence.

4          You're also advised that you're entitled to

5   assistance of counsel in taking an appeal.  And if you're

6   unable to afford a lawyer, one will be provided for you.

7   If you are unable to afford a filing fee, the clerk of

8   court will be directed to accept notice of appeal without

9   such fee.

10         Do you understand everything that's happened, sir?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  The Court is in recess until 1:30.

13         (Proceedings adjourned at 10:48)

14

15             C E R T I F I C A T E

16

17         I certify that the foregoing is a correct

18   transcript from the record of proceedings in the

19   above-entitled matter.

20

21   s\Amie R. First, RPR, CRR

22

23

24

25

# Docket 13-14095-D

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

### UNITED STATES OF AMERICA,

Appellee,

v.

### SHAWN MARSHALL,

Appellant.

### CERTIFICATE OF SERVICE

MARK DIAMOND, an attorney admitted before the U.S. Court of Appeals for the Eleventh Circuit, certifies that on April 30, 2014, I filed two copies of the Appellant's Appendix with Clerk, U.S. Court of Appeals, 56 Forsyth Street, NW, Atlanta, GA 30303, and served a copy on Andrew Searle, U.S. Attorney's Office, 400 West Washington Street, Suite 300, Orlando, FL 32805, and Shawn Marshall, 58253-018, USP Tucson, 9300 South Wilmot Road, Tucson, AZ 85756, by first-class mail through the U.S. Post Office, and electronically with the Court

/s/ Mark Diamond
Attorney for Appellant

1